IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| C.O., a minor, and PAT OMAN, his parent, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV05-558-HU |
| vs. | ) ) | OPINION AND ORDER |
| PORTLAND PUBLIC SCHOOLS, Multnomah School District No. 1, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

Pat Oman
4015 NE Multnomah Street
Portland, Oregon 97232
         Pro se

Jeffrey D. Austin
J. Michael Porter
Sarah A. Lowinger
Miller Nash
111 S.W. Fifth Avenue Suite 3400
///

Portland, Oregon 97204
    Attorneys for defendants

HUBEL, Magistrate Judge:

This is an action brought pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400-1487; section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Titles II and IV of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213; federal civil rights statutes, 42 U.S.C. §§ 1983 and 1985, based on violation of the First and Fourteenth Amendments to the United States Constitution and § 504, IDEA and ADA; Or. Rev. Stat. §§ 659.850, 659A.403, and 659A.142; and a common law claim for intentional infliction of emotional distress (IIED).

Plaintiffs are a child, C.O., and his parent, Pat Oman. Defendants are Portland Public Schools (PPS); the PPS Program Director, Maxine Kilcrease; PPS Special Education Attorney Constance Bull; PPS District representatives Theresa Middleton and Janet Wagner; Jack Ubik, former Fernwood Middle School principal; Alana Coulter, PPS Special Education supervisor; the Oregon Department of Education (ODE); and Susan Castillo, the Superintendent of Public Instruction.

Defendants move to dismiss the Amended Complaint.

## Factual Allegations

The Amended Complaint alleges that from September 1993 to the present time, C.O. has been a student enrolled in PPS,

identified with a "specific learning disability" and receiving special education services. He attended Laurelhurst Elementary School from 1993 to 1999 and Fernwood Middle School from 1999-2002. Since the 2002-2003 school year, he has been enrolled at Grant High School.

C.O. was identified as a student with a "specific learning disability" in February 1996. Testing done in February 1996, when C.O. was in second grade and had not received any special education services, showed that his math ability was at the second grade level. Testing done in February 2000, when C.O. was in the sixth grade, after more than three years of specialized instruction in math, showed that his overall math ability was equivalent to that of a third grader. Testing done in February 2003, when C.O. was in the ninth grade and after more than six years of specialized instruction in math, showed that C.O. had an overall math ability equivalent to that of a fourth grader.

In the summer of 1996, at his parents' expense, C.O. attended a short, intensive reading program for dyslexics, during which time he learned to read. Between February 1996 and February 2000, C.O.'s reading composite standard score rose from the fourth percentile to the 39th percentile.

Plaintiffs allege that with appropriate instruction, including one-on-one tutoring, C.O. is capable of learning, as evidenced by the rise in his reading ability between February

1996 and February 2000. However, from February 2000 to February 2003, after three years of specialized instruction in reading, C.O.'s reading ability deteriorated; testing revealed that he had the academic skills of a sixth grader and his writing sample test score was at the equivalent of third grade.

PPS offers vocational, technical, and specialized education curricula at magnet schools and in designated special programs. However, it is PPS's policy that teams generating educational programs and placements for students with disabilities do not place disabled students in PPS magnet schools or in designated special programs, regardless of whether doing so would provide access to an individualized education suited to a particular disabled child.

The Amended Complaint alleges that from March 16-31, 2005, an administrative due process hearing was held to adjudicate most of the allegations contained in the Amended Complaint. However, plaintiffs allege that they are still aggrieved because the relief ordered by the administrative law judge (ALJ) is insufficient to allow C.O. access to the general curriculum and does not compensate for his lost educational opportunities. Plaintiffs request that the court receive the records of the administrative proceedings, hear additional evidence, and conduct a jury trial on their claims.

///

**Standards**

A motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Edwards v. Marin Park, Inc., 356 F.3d 1058, 1061 (9th Cir. 2004). When ruling on a 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff. Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

**Statutory Background**

**A.    The IDEA**

IDEA provides states with federal funds to help educate children with disabilities if the states provide every qualified child with a free appropriate public education (FAPE) that meets federal statutory requirements. Amanda J. v. Clark County School Dist., 267 F.3d 877, 882 (9th Cir. 2001). Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate education that emphasizes special education and related services designed to meet their unique needs" and "to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities..." 20 U.S.C. §§1400(d)(1)(A) and (3).

The disabled child's needs are addressed in an Individualized Education Program (IEP), which is specially

created for that child through the collaborative efforts of the child's parents, teachers, the local educational agency, and, in appropriate cases, the child himself. 20 U.S.C. § 1414(d)(1)(B). To comply with the IDEA, the IEP must describe the child's present performance levels, the educator's short and long term goals, the specific educational services to be provided, how much the child can participate in regular educational programs, and objective criteria for measuring the child's progress. 20 U.S.C. § 1414(d)(1)(A). At a minimum, the IEP must be reviewed annually to measure the child's progress and to modify his goals and objectives. 20 U.S.C. § 1414(d)(1)(A), (d)(4). Parents and teachers may request more frequent IEP reviews if they feel the child's needs have changed or are not being successfully addressed. Id.

The IDEA creates a right, enforceable in federal court, to the free appropriate public education required by the statute. Honig v. Doe, 484 U.S. 305, 310 (1988). The IDEA also grants parents specific procedural rights, which they may enforce in administrative proceedings as well as federal court. The IDEA allows parents to represent their children in administrative due process hearings before state or local agencies. 20 U.S.C. § 1415(h)(2); 34 C.F.R. § 303.422(b)(2)(parents have the right to present evidence and examine witnesses in administrative due process hearings held pursuant to IDEA).

IDEA also confers the right to bring a civil action in federal court after a state administrative decision on the adequacy of the child's IEP. Id. at 1415(i)(2)(A).

**B.    Section 504 of the Rehabilitation Act**

To make out a claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, a plaintiff must establish, *inter alia*, that he is 1) an individual with a disability; 2) otherwise qualified; and 3) subjected to discrimination solely by reason of his disability. 29 U.S.C. § 794(a).

**C.    The ADA**

Title II of the ADA provides:

> No qualified individual with a disability shall, by
> reason of such disability, be excluded from
> participation in or be denied the benefits of the
> services, programs, or activities of a public entity,
> or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act. Zukle v. Regents of the University of California, 166 F.3d 1041, 1045 (9th Cir. 1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

By statute, the remedies for violations of the ADA and the Rehabilitation Act are co-extensive with each other, 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2), and are linked to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. These statutes require that ADA and Rehabilitation Act remedies be

construed in the same manner as remedies under Title VI. States are no longer immune from damages. 42 U.S.C. § 2000d-7(a)(2). <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668, 673 (9th Cir. 1998).

**Claims**

**A.    IDEA**

Plaintiffs allege that the defendants violated IDEA in the following respects:

1.    Defendant Middleton, as the PPS person authorized to commit resources, made final decisions about what to include in C.O.'s IEP at the final IEP meeting on April 24, 2002. Middleton was unfamiliar with C.O., lacked knowledge about specific learning diabilities generally and dyslexia in particular, did not ensure that a regular teacher participated in that meeting, and did not provide copies of C.O.'s prior educational records to the parent before the meeting, although asked to do so. Defendants Middleton and PPS did not give full and fair consideration to the parent's requests for evaluations, services, measurable goals and other IEP content, accommodations, and supports for C.O.; did not provide prior written notice as required by law; and failed to ensure that a final version of the IEP was provided to the parent, all precluding the parent from meaningful involvement in

the development of the IEP.

2. The IEP developed for C.O. in April 2002 was substantively defective in that defendants Wagner and Middleton failed to provide sufficient resources, measurable goals, accommodations and supports to enable C.O. to obtain more than minimal educational benefit.

3. Defendants Wagner and Middleton did not ensure that the April 2002 IEP included an effective transition plan for C.O. and did not consider a vocational/technical education curriculum or placement for C.O. in a vocational/technical program, despite knowing that this was his desire and that of his parents.

4. In April 2002, defendants Wagner and Middleton, although they were authorized to commit resources, did not consider placement of C.O. in a CIM summer academy, a program for students not meeting benchmarks, despite knowing that this would have benefited C.O.

5. From September 2001 to April 15, 2002, there was no documentation of progress toward C.O.'s IEP academic goals. Thus, the IEP developed in April 2002 was not based on standardized, measurable data about his

progress during eighth grade.

6.    In April 2002 the IEP team did not consider placement
      for C.O. in a vocational/technical program at a magnet
      school because PPS has a policy of not allowing IEP
      teams to make such placements; defendant Kilcrease
      furthered this policy.

7.    The refusal to consider the placement of C.O. in a
      vocational/technical curriculum constitutes a loss of
      educational opportunity.

8.    C.O.'s placement was predetermined before the
      completion of his April 2002 IEP.

9.    Defendants Ubik and Wagner did not respond to requests
      for information, access to educational records, and
      services made by C.O.'s parent in a letter dated April
      26, 2002; as a consequence, parent did not have
      information necessary for informed consent to an
      evaluation.

10.   Defendant Coulter did not respond to a request for
      mediation made by C.O.'s parent by letter dated June
      7, 2002.

11.   PPS did not implement portions of C.O.'s April 2002
      IEP.

12.   During two pre-hearing conferences for an
      administrative due process hearing defendant Constance

Bull stated that the parent could not contact or speak to C.O.'s teachers or other PPS staff, and stated her intention of prohibiting C.O.'s teachers from speaking to the parent, in retaliation for the plaintiffs' participation in a due process hearing and because of the parent's opposition to PPS's discriminatory and retaliatory practices. During the course of the due process hearing, defendant Bull also placed conditions on access to C.O.'s educational records, and withheld records from the parent, in retaliation for plaintiffs' participation in the due process hearing.

13. Defendants Kilcrease and Bull unreasonably delayed reimbursement for a properly obtained Independent Educational Evaluation (IEE), in retaliation for complaints about C.O.'s education, and in an attempt to coerce the parent into abandoning the due process hearing. Defendants Bull and Kilcrease required a confidentiality agreement as a precondition of reimbursement; this was also in retaliation for the parent's complaints to the ODE.

13. In response to parental concerns about C.O.'s education, the parent's complaints, initiation of a due process hearing, and opposition to illegal and discriminatory practices, defendants PPS, Kilcrease,

and Bull intentionally retaliated against plaintiffs,
who were consequently prevented from obtaining a fair
and independent administrative due process hearing.

14. By letters and memos, C.O.'s parent requested
evaluations, IEP meetings, information about proposed
evaluations, access to records, and changes in
placement; there was no written response to these
requests and no prior notice of the refusal to provide
any of the requested information, services, IEP
meetings, or changes in placement. Progress reports
from 1999 to the present are inaccurate, misleading,
or nonexistent.

15. PPS has a policy and practice of determining special
education eligibility for students with learning
disabilities by identifying a discrepancy between
academic ability and academic achievement. By policy,
IEP teams do not evaluate children in order to
identify their needs, but rather to make basic
eligibility determinations. In C.O.'s case, a
comprehensive evaluation has not been done, and his
needs are as yet unidentified. This is a continuing
violation from 1996 to the present.

16. By policy of PPS, magnet schools and specialized
programs are permitted to establish admission

standards that include academic achievement; these
constitute barriers to children with disabilities.

17. By policy of PPS, obtaining reimbursement for an IEE
    includes accessing the parents' insurance without
    explicit approval, requiring parents to pay for the
    IEE and then seek reimbursement, requiring parents to
    provide a copy of the IEE to the District prior to
    reimbursement, and requiring confidentiality
    agreements prior to reimbursement. These policies are
    barriers to the parents' ability to obtain an IEE.
    Defendants Bull and Kilcrease implemented these
    policies.

18. From 1999 to the present, PPS has employed ineffective
    methods of specialized instruction, thereby forcing
    C.O. to remain in a restrictive environment and
    consequently subjecting him to cruelty and harassment
    by his peers because of his status as a special
    education student. From September 1999 to June 2002,
    PPS and defendant Ubik made possible an environment of
    hostility and harassment of special education
    students.

19. Defendants ODE and Castillo are responsible for
    ensuring that the rights of Oregon's disabled children
    are protected. ODE is the state agency responsible for

conducting due process hearings and investigating complaints filed using state complaint procedures. By policy and practice, defendants ODE and Castillo have:

    a.    Conducted administrative due process hearings that place unrepresented parents at a disadvantage and fail to provide for a fair and impartial proceeding because the Oregon Rules of Civil Procedure are not followed and there is no requirement that school districts answer the complaint; because ODE and not the ALJ can make final decisions on the scope of discovery; and because ODE hearing procedures do not conform to Oregon's Administrative Procedures Act.

    b.    Failed to investigate fully all timely filed allegations, and carry out fair and impartial inquiries.

    c.    Issued deficient procedural safeguard notifications to parents.

**B.    Rehabilitation Act**

For their claim under the Rehabilitation Act, plaintiffs allege:

1.    In the eighth grade, C.O. applied to attend public

magnet schools in the PPS District, Metropolitan Learning Center (MLC) and Benson High School.

2.  C.O.'s application to attend Benson was rejected because he could not satisfy the minimal entrance requirement of achieving the eighth grade benchmarks and/or the eighth grade graduation standard, good grades, and a written essay.

3.  C.O.'s IEP team did not consider placement for C.O. at Benson or MLC because IEP teams, by PPS policy, are not permitted to place students in magnet programs. On information and belief, plaintiffs allege that PPS segregates special education students into restrictive environments, under the guise of placement in neighborhood schools, because PPS does not consider students with learning disabilities to be capable of succeeding without a level of support that PPS is unwilling to provide.

4.  The PPS policies and practices for admission to magnet schools and specialized programs discriminate against disabled children who cannot, by reason of their disabilities, achieve the academic standards required for admission. The current PPS magnet schools and designated special programs transfer policy is facially neutral, but discriminatory in effect.

5.  The failure of PPS to provide C.O. with more than minimal educational benefit, from 1996 to 2002, was the proximate cause of his inability to achieve the standards required for admission to Benson's vocational/technical program, or the social and academic skills required to succeed at MLC.

6.  By its policies and practices as described, PPS denied C.O. a free appropriate public education, and C.O. is entitled to compensatory educational services.

**C.   ADA**

For their claim for violation of the ADA, plaintiffs allege that

1.  Because of his learning disability, during the 2001-2002 school year, C.O. was not able to meet the entrance requirements for PPS magnet schools and designated special programs, and was excluded from participation in those programs. Defendants Wagner, Middleton, and Kilcrease implemented these policies. The change in the transfer process, to a lottery system, still does not accommodate the needs of disabled children because it does not allow placement teams to put a child in these "separate and better" programs. By policy and practice of PPS, students with specific learning disabilities are afforded no

reasonable accommodations that would level the playing field in the transfer process.

2.  Based upon the intentional acts of PPS and the ODE, through defendants Kilcrease, Bull, Wagner, Middleton, Ubik, Castillo and Coulter, C.O. was denied access to the benefits of a public program.

**D.  Civil rights statutes**

For their claim for violation of 42 U.S.C. §§ 1983 and 1985, plaintiffs allege that

1.  Defendant Castillo did not carry out her obligation to investigate fully allegations by the plaintiffs of violations of IDEA by the PPS and by the ODE, in violation of the equal protection clause.

2.  PPS has a history of refusing to provide a free and appropriate public education to disabled children in a non-discriminatory manner, and has a custom, pattern or practice of attempting to coerce, discourage or prevent employees from disclosing information about such discrimination. Defendant Bull conspired with PPS staff and teachers to prevent the parent from learning the substance of their testimony prior to the due process hearing; Bull's actions to prevent the parent from speaking to witnesses violated plaintiffs' First Amendment rights and denied plaintiffs their rights to

due process.

3.    Defendants ODE and Castillo have not exercised oversight and monitoring of PPS to ensure compliance with laws that protect disabled children.

4.    Defendants PPS, Wagner, and Middleton did not follow the procedures required by IDEA to ensure the provision of a free appropriate public education to C.O., and these are due process violations.

5.    Defendant Coulter falsely testified in the course of the due process hearing that she left multiple messages on plaintiff's voicemail.

6.    PPS's magnet schools/designated special programs' transfer policies discriminate against a particular class of students, those whose educational programs are delivered via IEPs written by IDEA or Section 504 teams, that cannot commit resources available in magnet schools and designated special programs.

### E. Intentional Infliction of Emotional Distress

For their claim for intentional infliction of emotional distress, plaintiffs allege that the failure of defendants Wagner, Middleton and Ubik to provide C.O. with a FAPE, carry out a comprehensive evaluation, and ameliorate the discrepancy between his academic ability and academic achievement has caused both plaintiffs to suffer severe emotional distress. They allege

further that plaintiff Pat Oman has suffered emotional distress as a result of the actions of defendant Bull in preventing her from talking to PPS staff and teachers, the actions of defendants Bull and Kilcrease in delaying reimbursement for an IEE and the action of defendant Coulter, in falsely testifying that she tried to contact Pat Oman.

### F. Relief sought

Plaintiffs seek damages in the amount of $666,000 for violation of the ADA and the civil rights statutes, including compensatory damages to C.O. for future lost earning capacity, emotional distress damages, and punitive damages.

In addition, they request injunctive relief, including an order directing PPS to 1) cease requiring unlawful conditions as a prerequisite to reimbursement for IEEs that otherwise meet PPS criteria; 2) allow IEP teams to consider placements in magnet schools and designated special programs; 3) cease requiring confidentiality agreements as a condition for IEE reimbursement, and directing PPS to offer to rescind all such agreements now in place. They seek an order directing ODE and Castillo to ensure that transfer policies for entry into magnet schools and designated special programs at PPS provide for the reasonable accommodation of children with learning disabilities.

Plaintiffs further request specific relief for C.O. in the form of a "compensatory education," a comprehensive evaluation by

a mutually agreed-upon evaluation team, a new IEP, compensation for educational services privately obtained from 1996 to 2005, and attorney's fees expended in the effort to obtain reimbursement for the IEE.

## Motions to Dismiss

All defendants have filed motions to dismiss.

The grounds for the motion by the PPS defendants are:

1.  A parent cannot bring a lawsuit on behalf of a minor without legal representation.

2.  Plaintiffs have failed to state claims under Section 504 of the Rehabilitation Act, the ADA, 42 U.S.C. §§ 1983 and 1985, Or. Rev. Stat. §§ 659.850, 659A142, 659A.403, and IIED.

3.  The Section 504, ADA, and civil rights claims predicated upon violations of these statutes should be dismissed as to the PPS employees because these statutes do not provide for individual liability.

4.  The IDEA and civil rights claims based upon this statute fail to defeat the PPS employees' qualified immunity.

5.  The state law claims against the PPS employees are barred by the Oregon Tort Claims Act.

6.  The claims for punitive damages should be dismissed or stricken because public entities, such as defendant

PPS are immune from punitive damages.

7.    The claims for punitive damages pursuant to the state statutory claims and the common law claim for IIED should be dismissed or stricken because they are barred by the OTCA.

8.    The IDEA claims based on conduct that occurred before March 16, 2002, are time barred.

9.    The claims under Section 504, the ADA, and §§ 1983 and 1985 that occurred before April 22, 2003, are time-barred.

The grounds for the motion to dismiss filed by the ODE defendants are:

1.    Plaintiffs cannot maintain state statutory claims against the State of Oregon, the ODE, or Susan Castillo in federal court.

2.    A parent cannot bring a lawsuit on behalf of a minor without legal representation.

3.    Plaintiffs have failed to state a claim under 42 U.S.C. § 1983.

## Discussion

### A.    PPS Defendants' Motions

#### 1.    Should the Amended Complaint be dismissed because Pat Oman may not represent her minor child, C.O.?

_____PPS asserts that it is well-established law that a guardian

or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer. <u>Johns v. County of San Diego</u>, 114 F.3d 874, 876 (9th Cir. 1997). The rationale for this rule is that the choice to appear *pro se* is not a "true choice for minors" who are unable to determine their own legal actions. 114 F.3d at 876. "It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys." <u>Id.</u>

Although the Court of Appeals for the Ninth Circuit has not addressed the issue of whether non-attorney parents are allowed to represent a minor in federal court pursuant to a claim for judicial review of an IDEA administrative determination, several others have concluded that they may not. *See* <u>Wenger v. Canastota Cent. Sch. Dist.</u>, 146 F.3d 123, 124-25 (2d Cir. 1998); <u>Collinsgru v. Palmyra Bd. of Educ.</u>, 161 F.3d 225, 227 (3d Cir. 1998); <u>Cavanaugh v. Cardinal Local Sch. Dist.</u>, 409 F.3d 753 (6th Cir. 2005), <u>Navin v. Park Ridge Sch. Dist.</u>, 270 F.3d 1147, 1149 (7th Cir. 2001); <u>Devine v. Indian River County Sch. Board</u>, 121 F.3d 576, 582 (11th Cir. 1997).

Plaintiff Pat Oman asserts that the IDEA's grant of rights to parents, considering them "aggrieved parties" with respect to matters relating to the identification, evaluation, or educational placement of the child, or the provision of a FAPE, 20 U.S.C. § 1415(b)(6), implies that parents may bring a civil

suit on their child's behalf. Oman relies on <u>Maroni v. Pemi-Baker</u> <u>Regional Sch. Dist.</u>, 346 F.3d 247 (1st Cir. 2003).

I find <u>Maroni</u> unpersuasive. The <u>Maroni</u> court relied on the IDEA's reference to parents as "aggrieved parties" entitled to judicial review under the IDEA, and on the statute's grant of rights to parents in order to ensure that the rights of children with disabilities and the parents of those children were protected, to conclude that IDEA granted the parents the right to sue *pro se* for procedural violations. 346 F.3d at 249. But as the court pointed out in <u>Devine</u>, although IDEA accords parents the right to bring actions on behalf of their disabled children, it "does not authorize them to act as counsel in such a lawsuit." 121 F.3d at 581.

In <u>Collinsgru</u>, the court recognized strong policy considerations supporting the requirement of representation by counsel, among them the state interest in regulating the practice of law, the importance of the rights at issue during litigation, and the final nature of any adjudication on the merits. 161 F.3d at 231. Additional reasons for the court's reluctance to find that Congress intended parents to be able to represent their children in IDEA litigation were the well-established presumption that Congress legislates against a background of common law principles and the common law rule that a non-lawyer may not represent another person in court. <u>Id.</u> at 231-32. The court

acknowledged that remedial statutes like the IDEA are to be construed liberally, but observed that this rule appears to be "most often applied to the remedies created, not the parties permitted to invoke the statute." Id. at 232, *citing* Miller v. Robertson, 266 U.S. 243, 248 (1924)(holding that a remedial provision should be liberally construed to give a remedy in all cases to be covered).

The Collingsgru court also applied the canon of *expressio unius est exclusio alterius*, to conclude that in the IDEA, Congress expressly provided that parents were entitled to represent their children in administrative proceedings, but did not also carve out an exception to permit parents to represent their children in federal proceedings. Id. at 232. The court rejected the argument that Congress intended to create joint rights in parents under the IDEA, concluding that neither the statutory language nor the legislative history clearly implied that Congress intended parents to have joint rights with their children under the IDEA. 161 F.3d at 235.

The Cavanaugh court followed much the same reasoning, noting that the Cavanaughs could point to no language in the IDEA abrogating the common law rule that a non-attorney may not represent another person in court, and holding that "to the contrary, the language of the IDEA evidences a congressional intent to prohibit non-lawyer parents from representing their

minor children. " This was based on the IDEA's explicit grant to parents of the right to a due process hearing, and on regulations providing parents the right to present evidence and examine witnesses on behalf of the child in such a proceeding. 20 U.S.C. § 1415(f)(1). In "stark contrast," the court said, the provision of the IDEA granting "[a]ny party aggrieved" access to the federal courts, 20 U.S.C. § 1415(i)(2)(A), "makes no mention of parents whatsoever." 409 F.3d at 756.

In Wenger, the court held that while the parent plaintiff was entitled to represent himself on his claims that his own rights as a parent under the IDEA were violated, the parent was not entitled to represent the child. 146 F.3d at 126.

I find the reasoning of Devine, Collinsgru, Cavanaugh, and Wenger persuasive.

Pat Oman also relies on Rule 17(c) of the Federal Rules of Civil Procedure (providing that a representative, such as a guardian, of any infant may sue or defend on behalf of that person) and Rule 3(c)(2) of the Federal Rules of Appellate Procedure (stating that a pro se notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children, if they are parties, unless the notice clearly indicates otherwise). I disagree that such procedural rules confer substantive rights on plaintiffs, or that they can be construed to abrogate the common-law rule barring a nonattorney

parent from representing a child.

The prevailing rule, and the rule I believe the Ninth Circuit will follow, is that nonattorney parents cannot represent their minor children in IDEA civil actions. The claims asserted by Pat Oman on behalf of C.O. are dismissed without prejudice, so that C.O. can bring an action on his own behalf when he reaches the age of majority, or through counsel now. *See* <u>Johns</u>, 114 F.3d at 878.

### 2. Do the claims under Section 504 of the Rehabilitation Act and the ADA fail to state a claim?

Because I have concluded that Pat Oman cannot represent her son in this action, the claims under § 504 and the ADA cannot stand, because these claims relate to the disability of C.O. There is no allegation that Pat Oman is disabled.

Insofar as these claims relate to C.O., they are dismissed without prejudice; to the extent they purport to assert a claim by Pat Oman, they are dismissed with prejudice.

### 3. Have plaintiffs failed to state claims under 42 U.S.C. §§ 1985 and 1983?

Plaintiffs' allegations under these causes of action are 1) that PPS had a policy preventing IEP teams from placing disabled children in magnet schools; 2) that PPS had a custom, pattern or practice of attempting to prevent employees from disclosing information about IDEA violations; 3) that defendants failed to train employees in the requirements of IDEA, § 504, and the ADA;

and 4) that individual defendants retaliated against the parent, Pat Oman, thereby violating the Fourteenth Amendment and the First Amendment. The first and third of these allegations appear to pertain only to C.O., and should therefore be stricken; the second and fourth arguably pertain to Pat Oman.

Pat Oman has clearly failed to state a claim for a violation of 42 U.S.C. § 1985(2) for herself. 42 U.S.C. § 1985(2) contains two clauses that give rise to separate causes of action. The first portion of § 1985(2) proscribes conspiracies that interfere with "federal judicial proceedings," Kush v. Rutledge, 460 U.S. 719, 724 (1983), and the second portion "applies to conspiracies to obstruct the course of justice in state courts." Id. at 725. While a plaintiff must allege class-based animus to state a claim for denial of access to state courts, Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), no such requirement exists for an action asserting denial of access to federal courts. Kush, 460 U.S. at 726. Because Pat Oman has not alleged class-based animus against herself, the court assumes that she is attempting to assert a claim under the first clause.

Under the first clause, plaintiff establishes a claim upon a showing of the following: 1) a conspiracy by the defendants; 2) to deter, by force, intimidation, or threat, any party or witness from attending a court of the United States or testifying in a matter pending therein "freely, fully, and truthfully," or to

injure a party or witness in his or her person or property on account of so attending or testifying; and 3) injury or damages to the plaintiff. 42 U.S.C. § 1985(2); <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 909 (9th Cir. 1993); <u>David v. United States</u>, 820 F.2d 1038, 1040 & n. 3 (9th Cir. 1987).

On its face, the first clause of § 1985(2) applies to proceedings in federal court, not to administrative proceedings conducted by a state Department of Education. Other courts have held that interference with or obstruction of administrative proceedings is not redressable under § 1985(2). *See, e.g.,* <u>Deubert v. Gulf Federal Savings Bank</u>, 820 F.2d 754 (5th Cir. 1987); <u>Soltani v. Smith</u>, 812 F. Supp. 1280 (D. N.H. 1993). *See also* <u>Kush</u>, 460 U.S. at 724-25. Moreover, Pat Oman has not alleged that she or any witness was injured in his or her person or property.

Pat Oman has requested discovery on the issue of whether defendant Bull instructed teachers and other school staff not to talk to Pat Oman before the due process hearing, but such discovery would not remedy two other flaws in her claim: the fact that § 1985(2) applies to federal court proceedings, and her failure to allege injury to herself or her property. I conclude that even if Pat Oman were allowed additional discovery, it would not save this claim. The § 1985 claim is dismissed.

///

Whether Pat Oman has stated a claim for a § 1983 claim is discussed below, in the context of qualified immunity.

### 4.   Have plaintiffs stated a claim for IIED?

The elements of this tort are 1) that the defendant intended to inflict severe emotional distress on the plaintiff; 2) that the defendant's acts caused the plaintiff severe emotional distress; and 3) that the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct or exceeded any reasonable limit of social toleration. Patton v. J.C. Penney Co., 301 Or. 117, 122 (1986); Sheets v. Knight, 308 Or. 220, 236 (1989). Substantial certainty that severe emotional distress will result satisfies the first element, McGanty v. Staudenraus, 321 Or. 532, 543 (1995), but indifference to possible distress, or even gross negligence, is not enough. *See* Humphers v. First Interstate Bank, 68 Or. App. 573, 576*, aff'd in part, rev'd in part on other grounds,* 298 Or. 706 (1985).

Defendants move against this claim on the grounds that plaintiffs have failed to allege the necessary elements of intent and outrageousness. I agree. Nowhere in the complaint is there an allegation that the defendants intended to inflict severe emotional distress on the plaintiffs or were substantially certain that their actions would result in severe emotional distress to the plaintiffs; nor is there an allegation that the

conduct of the defendants was an extraordinary transgression of the bounds of socially tolerable conduct.

Although plaintiffs argue that defendants' conduct amounted to "stigmatizing a child all through middle school and high school as stupid," that is not what has been alleged, and in any event would not state a claim for Pat Oman. The claim for IIED is dismissed without prejudice as to C.O., and dismissed with leave to replead, as to Pat Oman.

### 5. Have plaintiffs stated a claim under Or. Rev. Stat. § 659.850?

Or. Rev. Stat. § 659.850(2) provides:

> No person in Oregon shall be subjected to discrimination in any public elementary, secondary or community college education program or service, school or interschool activity * * * where the program, service, school or activity is financed in whole or in part by moneys appropriated by the Legislative Assembly.

"Discrimination" is defined as:

> any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on age, disability, national origin, race, marital status, religion, or sex.

Or. Rev. Stat. § 659.850(1).

Defendants argue that the statute prohibits disparate treatment only if the differentiation is unreasonable, Or. Rev. Stat. § 659.850(1), and that plaintiffs have not alleged any specific actionable discrimination against C.O. based on his

disability or a policy that has a discriminatory disparate impact.

Plaintiffs argue that the PPS policy of allowing only children with certain academic skills into magnet skills is "fair in form, but discriminatory in operation," constituting a "separate but equal" approach to allocating school resources.

This claim is dismissed without prejudice as to C.O., on the ground that his non-attorney parent cannot represent him. Plaintiffs have not alleged that Pat Oman was discriminated against on the basis of age, disability, national origin, race, marital status, religion, or sex. To the extent the claim purports to assert a claim on behalf of Pat Oman, it is dismissed with prejudice.

### 6. Should the claim under Or. Rev. Stat. § 659A.142 be dismissed?

At oral argument, plaintiffs identified this claim as one asserted under Or. Rev. Stat. § 659A.142(3), which prohibits discrimination against disabled persons by employment agencies, labor organizations, places of public accommodation or state government. Plaintiffs have not alleged facts under which Pat Oman could assert a claim under this provision, and the claims asserted on behalf of C.O. are dismissed without prejudice.

Defendants move against the claim on a separate ground, which is that public schools are not considered "places of public

accommodation" for purposes of this statute, citing <u>Schwenk v. Boy Scouts of America</u>, 275 Or. 327, 334 (1979)(legislative history suggests that predecessor to Or. Rev. Stat. § 659A.142(3) was intended to prohibit discrimination by business or commercial enterprises which offer goods or services to the public); <u>Adam v. Linn-Benton Husing Authority</u>, 147 F. Supp.2d 1044, 1048 n. 5 (D. Or. 2001)(Housing Authority not a place of public accommodation as envisioned by the statute; statute speaks of "customers" and "patrons" and legislative history suggests it was designed to prevent discrimination by retail and commercial establishments).

I agree with defendants that schools are not places of public accommodation, and for that reason, as well as the reasons already stated, this claim is dismissed.

### 7. Should the claim under Or. Rev. Stat. § 659A.403 be dismissed?

Or. Rev. Stat. § 659A.403 requires:

> full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color, national origin or age if the individual is 18 years of age or older.

Plaintiffs concede that this claim is asserted on behalf of C.O., and that Or. Rev. Stat. § 659A.403 does not prohibit discrimination on the basis of disability, so this claim is dismissed.

### 8. Should plaintiffs' claims under § 504 and the ADA be dismissed because they do not provide for individual liability?

Defendants contend that plaintiffs' claims against the PPS employees under § 504 and the should be dismissed because claims against government officials in their individual capacities under § 504 and the ADA are not permitted. See <u>Becker v. Oregon</u>, 170 F. Supp.2d 1061, 1066-67 (D. Or. 2001)(individual defendants may not be sued in their individual capacities under the ADA or § 504 because neither statute provides for individual liability).

Plaintiffs concede the argument. The claims asserted against the PPS employees in their individual capacities under § 504 and the ADA are dismissed on this alternate ground as well.

### 9. Should plaintiffs' claims under the IDEA and § 1983 be dismissed on the grounds of qualified immunity?

Defendants assert that claims against government officials in their individual capacities are not permitted under the IDEA or under § 1983 unless, under the standard of qualified immunity, the plaintiff can demonstrate that the individual defendant has violated clearly established statutory or constitutional rights of which a reasonable person should have known. For the argument that IDEA claims against school officials are subject to a qualified immunity defense, defendants rely on district court cases outside this jurisdiction, <u>Roe ex rel. Preschooler II v. Nevada</u>, 332 F. Supp.2d 1331, 1346-47 (D. Nev. 2004); <u>Padilla v.</u>

Sch. Dist. No. 1, Denver Colorado, 35 F. Supp.2d 1260, 1269-70
(D. Colo. 1999), *rev'd in part on other grounds,* 233 F.3d 1268
(10th Cir. 2000); W.B. v. Matula, 67 F.3d 484, 499 3rd Cir. 1995);
Bradley v. Arkansas Dept. of Education, 301 F.3d 952, 955-57 (8th
Cir. 2002).

Defendants argue that the plaintiffs have not alleged that
PPS employees violated clearly established statutory or
constitutional rights of which a reasonable person should have
known, and therefore fail to state claims under the IDEA and §
1983. I disagree with these contentions and conclude that, even
assuming IDEA claims against school officials are subject to a
qualified immunity defense, defendants are not entitled to claim
qualified immunity.

Public officials are entitled to qualified immunity from
"liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known." Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533
U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court clarified the
analytical sequence for qualified immunity. A qualified immunity
analysis must begin with this threshold question: based upon the
facts taken in the light most favorable to the party asserting
the injury, did the defendant's conduct violate a constitutional
right? Id. at 2156.

If no constitutional right was violated, the court need not inquire further. <u>Id.</u> If, however, a constitutional violation occurred, the second inquiry is whether the defendant could nevertheless have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established constitutional right. <u>Id.</u> at 2158-59.

The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established. <u>Doe v. Petaluma City School District</u>, 54 F.3d 1447, 1450 (9th Cir. 1995). I conclude that Pat Oman has met this burden.

In 1989, the Ninth Circuit held that deliberate retaliation against an individual for filing a complaint violated his right of access to the courts, subsumed under the First Amendment right to petition the government for redress of grievances, and was actionable under 42 U.S.C. § 1983 and the First Amendment. <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989). In alleging that the PPS defendants retaliated against her for requesting a due process hearing, Pat Oman has stated a claim under § 1983 for violation of her First Amendment rights.

The IDEA, besides conferring the right to a FAPE on a child with a disability, also grants parents a number of procedural rights. See 20 U.S.C. §§ 1414-1415. Among the procedural rights guaranteed to parents by the IDEA are the right to examine all records relating to the child, to participate in meetings dealing

with the identification, evaluation, and educational placement of the child, to obtain independent educational evaluations of the child, to participate as a member of the IEP team in designing the child's IEP and, as a member of the team, review existing evaluation data on the child.

A school district's failure to disclose a child's full records to his parents is a violation of the IDEA, as is a district's independent development of an IEP without meaningful parental participation. *See* <u>Amanda J.</u>, 267 F.3d at 882; <u>Ms. S. ex rel. G. v. Vashon Island Sch. Dist.</u>, 337 F.3d 1115, 1131 (9th Cir. 2003).

Pat Oman has alleged violation of clearly established procedural rights under the IDEA, including allegations that she was denied access to C.O.'s teachers and other PPS staff, that C.O.'s educational records were withheld from her, that she was denied reimbursement for an IEE, and that she was refused information about evaluations, proposed evaluations, IEP meetings, and access to records. The motion to dismiss Pat Oman's § 1983 claims based on violation of the First Amendment and IDEA, on the ground of qualified immunity, is denied.

### 10. Are plaintiffs' claims against the PPS employees barred by the Oregon Tort Claims Act?

Defendants assert that plaintiffs' state law claims against the PPS employees for IIED and under Or. Rev. Stat. chapter 343,

§ § 659.850, 659A.142, and 659A.403 are barred by the Oregon Tort Claims Act (OTCA). The OTCA provides that "[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties *** shall be an action against the public body only." Or. Rev. Stat. § 30.265(1).

Plaintiffs concede that the OTCA bars a cause of action against employees acting within the scope of their duties, but argue that "discriminating against children and retaliating against their parents is not within the scope of their official duties." Memorandum in Opposition, p. 24.

The issue of whether an official has acted within the scope of his or her employment duties requires consideration of whether 1) the conduct was of the kind the defendant was hired to perform; 2) whether the conduct occurred within an authorized time and space, and 3) whether the defendant was motivated at least in part by a purpose to serve the employer. Lumbreras v. Roberts, 319 F. Supp.2d 1191, 1214 (D. Or. 2004). As defendants point out, plaintiffs' allegations in this case are based on the acts of PPS employees with respect to C.O.'s IEP, their responses to plaintiff Pat Oman's demands and requests (for records, evaluations, reimbursements, etc.) and C.O.'s due process hearing. This conduct satisfies the requirements for acting within the scope of one's employment duties.

I conclude that these claims should also be dismissed as to the individual defendants on the alternate ground that plaintiffs have failed to allege that the PPS employees were not acting within the scope of their duties.

## 11. Should the court strike the request for punitive damages?

Defendants assert that as a municipality, PPS is immune from punitive damages under §§ 1983 and 1985. <u>Newport v. Facts Concerts, Inc.</u>, 453 U.S. 247, 271 (1981); <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 527 (9th Cir. 1996). Plaintiffs have not addressed this issue. The request for punitive damages against PPS pursuant to the § 1983 claim is stricken.

Defendants also assert that the OTCA bars plaintiffs from seeking punitive damages pursuant to their state law claims. *See* Or. Rev. Stat. § 30.270(2):("No award for damages on any such claim [governed by the OTCA] shall include punitive damages.") The request for punitive damages on the state law claims is stricken.

## 12. Are plaintiffs' allegations time-barred?

Civil actions arising under statutes enacted after December 1, 1990, are subject to the four-year federal statute of limitations provided by 28 U.S.C. § 1658. In <u>Jones v. R.R. Donnelly & Sons Co.</u>, 541 U.S. 369, 382 (2004), the Supreme Court held that a cause of action is governed by § 1658 if the

plaintiff's claim was made possible by a post-1990 enactment.

Defendants assert that all of plaintiffs' claims are subject to the two-year state personal-injury statute of limitations, Or. Rev. Stat. § 12.110(1), that applies where § 1658 is inapplicable. *See* <u>Wilson v. Garcia</u>, 471 U.S. 261, 269 (1985)(§ 1983 claim); <u>Douglas v. California Dept. of Youth Authority</u>, 271 F.3d 812 (9th Cir.), *amended,* 271 F.3d 910 (9th Cir. 2001)(§ 504 claim); and <u>Pickern v. Holiday Quality Foods Inc.</u>, 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002)(ADA claim).

Although plaintiffs argue that some of their allegations constitute claims made possible by post-1990 amendments to the IDEA or § 504, they do not identify what these allegations are. They do not challenge a two-year statute of limitations for the § 1983 claim.

Defendants argue that "to the extent that Plaintiffs' Sections 1983 and 1985 claims incorporate allegations before April 22, 2003, those allegations fail to state a claim." However, defendants have not identified what those untimely allegations are.

The OTCA governs the state-law claims, and under that statute, claims against a public body and its employees are subject to a two-year limitations period. Or. Rev. Stat. § 30.275(9).

The applicable statute of limitations for filing a civil

action requesting review of a the hearings officer's decision after a due process hearing is 120 days after the date of the hearing officer's final order. Or. Rev. Stat. § 343.175(4). The hearings officer entered her final order on March 31, 2005. Plaintiffs filed this action on April 22, 2005.

It cannot be ascertained from the face of the Amended Complaint whether some or all of the causes of action are time-barred, or whether there are circumstances which could equitably toll the statutes of limitation. Unless Pat Oman can allege facts to support equitable tolling of the statutes of limitation, her claims will be limited to those based on events occurring within two years of the filing of this complaint.

**B.     The ODE defendants' other motions**

  **1.     Can plaintiffs maintain state statutory claims against the State of Oregon, the ODE or Susan Castillo in federal court?**

The issues of whether Pat Oman can represent her son in federal court, and whether she has stated a claim under 42 U.S.C. § 1983, have already been discussed. The only remaining issue raised by the ODE defendants is whether the Eleventh Amendment bars Pat Oman's claims.

The ODE defendants move to dismiss plaintiffs' state law claims under <u>Pennhurst State School v. Halderman</u>, 465 U.S. 89, 121 (1984). In <u>Pennhurst</u>, the Supreme Court held that the

Eleventh Amendment bars state law claims brought in federal court against a state. The state law claims against the ODE defendants are dismissed on Eleventh Amendment grounds, as well as for the alternate reasons stated above.

## Conclusion

Defendants' motions to dismiss (doc. ## 8, 11) is GRANTED in part and DENIED in part, as follows:

All claims asserted on behalf of C.O. are dismissed without prejudice.

The claims based on § 504 and the ADA, insofar as they are asserted on behalf of Pat Oman, are dismissed because Pat Oman has not alleged that she is disabled.

The claim based on 42 U.S.C. § 1985(2) is dismissed because § 1985(2) does not apply to administrative proceedings conducted by a state Department of Education and because Pat Oman has not alleged that she or any witness was injured by the defendants.

The claims based on Or. Rev. Stat. §§ 659.850, 659A.142, and 659A.403 are dismissed for failure to state a claim; additionally, they are dismissed as to the ODE defendants on Eleventh Amendment grounds and against the individual defendants because such claims against individuals are barred by the Oregon Tort Claims Act.

The claim for IIED is dismissed for failure to state a claim.

Defendants' motion to dismiss the § 1983 claim based on violation of Pat Oman's First Amendment rights and her procedural rights under the IDEA, is denied.

Defendants' request for qualified immunity, based on Pat Oman's failure to plead violation of clearly established constitutional and statutory rights, is denied.

The motion to strike the request for punitive damages is granted.

Defendants' motion to dismiss all of plaintiffs' claims as time barred is denied; unless Pat Oman repleads to allege facts sufficient to warrant equitable tolling, Pat Oman's claims will be limited to those arising from events occurring within two years of the filing of this action.

IT IS SO ORDERED.

Dated this 22nd day of December, 2005.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge