1

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8                 FOR THE DISTRICT OF OREGON

9

10  PAT OMAN,                           )
                                        )
11            Plaintiff,                )   Case No. CV05-558-HU
                                        )   (Lead Case)
12        vs.                           )
                                        )   Case No. CV05-1715-HU
13  PORTLAND PUBLIC SCHOOLS,            )
    Multnomah School District No. 1,    )
14  et al.                              )
                                        )
15            Defendants.               )
    ─────────────────────────────────── )        OPINION AND
16                                      )          ORDER
    PAT OMAN,                           )
17                                      )
              Plaintiff,                )
18                                      )
          vs.                           )
19                                      )
    PORTLAND PUBLIC SCHOOLS, et al.     )
20                                      )
              Defendants.               )
21  ─────────────────────────────────── )

22  Pat Oman
    4015 NE Multnomah Street
23  Portland, Oregon 97232
          Pro se
24
    Jeffrey D. Austin
25  J. Michael Porter
    Sarah A. Lowinger
26  Miller Nash
    111 S.W. Fifth Avenue Suite 3400
27

28  OPINION AND ORDER Page 1

1  Portland, Oregon 97204
        Attorneys for PPS defendants
2
   Hardy Myers
3  Attorney General
   Kenneth C. Crowley
4  Senior Assistant Attorney General
   Department of Justice 1162 Court Street NE
5  Salem, Oregon 97301
        Attorneys for state defendants
6
7  HUBEL, Magistrate Judge:

8      These are consolidated actions brought pursuant to the

9  Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§

10 1400-1487. The defendants are Portland Public Schools (PPS) and

11 individuals employed with PPS (collectively, the PPS defendants);

12 the Oregon Department of Education (ODE), State Superintendent for

13 Public Instruction Susan Castillo, and individuals employed by the

14 ODE (collectively, the state defendants).

15     The matters before the court are the PPS defendants' Motion

16 for Summary Judgment (doc. # 96), the state defendants' Motion for

17 Summary Judgment (doc. # 105), plaintiff's Motion for

18 Reconsideration of Previous Rulings (doc. # 127), state defendants'

19 Motion to Affirm this Court's Pre-Winkelman Decisions (doc. # 121),

20 and PPS defendants' Motion to Affirm Prior Decisions in Light of

21 Winkelman, (doc. # 123).

22                          **Standards**

23 I.   Summary judgment

24     Summary judgment is appropriate "if the pleadings,

25 depositions, answers to interrogatories, and admissions on file,

26 together with the affidavits, if any, show that there is no genuine

27

28 OPINION AND ORDER Page 2

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the factfinder, not the judge, when he is ruling on a motion for summary judgment. Id.

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001). When different ultimate inferences can be reached, summary judgment is not appropriate. Sankovich v. Life Ins. Co. Of N. America, 638 F.2d 136, 140 (9th Cir. 1981).

The criteria of "genuineness" and "materiality" are distinct requirements. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Nidds v. Schindler Elevator Corp., 113 F.3d 912 (9th Cir. 1997). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's motion for summary judgment. The authenticity of a dispute is determined by whether there is sufficient evidence that a reasonable factfinder could return a verdict for the nonmoving

OPINION AND ORDER Page 3

1  party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2  "If the evidence is merely colorable, or is not significantly

3  probative, summary judgment may be granted." Id. at 249-50.

4      The materiality of a fact is determined by the substantive law

5  on the issue. Anderson, 477 U.S. at 248; T.W. Electrical Service,

6  Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630

7  (9th Cir. 1987). Only disputes over facts that might affect the

8  outcome of the suit under the governing law will properly preclude

9  the entry of summary judgment. Anderson, 477 U.S. at 248.

10      The moving party has the burden of establishing the absence of

11  a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

12  U.S. 317, 323 (1986).  If the moving party shows the absence of a

13  genuine issue of material fact, the nonmoving party must go beyond

14  the pleadings and identify facts which show a genuine issue for

15  trial. Id. at 324. Assuming that there has been sufficient time for

16  discovery, summary judgment should be entered against a "party who

17  fails to make a showing sufficient to establish the existence of an

18  element essential to that party's case, and on which that party

19  will bear the burden of proof at trial." Id. at 322.

20  II.  IDEA claims for judicial review of due process hearings

21      Traditional standards for summary judgment do not apply to the

22  court's review of IDEA claims based on challenges to a due process

23  hearing, because the statute permits the court to review any new

24  evidence along with the administrative record. Capistrano Unified

25  Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995). The

26  court must "make an independent judgment based on a preponderance

27

28  OPINION AND ORDER Page 4

of evidence and giving due weight to the hearing officer's determinations." The court reviews the ALJ's decision applying a modified de novo standard. <u>Pitchford v. Salem Keizer Sch. Dist.</u>, 155 F. Supp.2d 1213, 1215 (D. Or. 2001). The proper amount of deference given to the ALJ's decision is a "matter for the discretion of the courts." <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987). The hearing officer's decision is entitled to "substantial weight" if it "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1476 (9th Cir. 1993).

The burden of proof in an IDEA case is on the party challenging the administrative ruling. <u>Clyde K. v. Puyallup Sch. Dist. No. 3</u>, 35 F.3d 1396, 1398-99 (9th Cir. 1994), *superseded by statute on other grounds, as recognized in <u>M.L. v. Federal Way Sch. Dist.</u>, 341 F.3d 1052 (9th Cir. 2003).*

III. <u>IDEA retaliation claims</u>

The parties agree that there do not appear to be any published court cases describing the legal standard governing an IDEA claim by a parent alleging retaliation by a school district or a state educational agency. PPS urges the court to apply the familiar <u>McDonnell Douglas</u> burden-shifting standard used in retaliation claims brought pursuant to civil rights statutes, such as Title VII and the Americans with Disabilities Act, prohibiting employers from retaliating against employees who oppose discriminatory employment practices. To establish a prima facie case of retaliation under

OPINION AND ORDER Page 5

this standard, the employee must show that 1) he has engaged in statutorily protected expression; 2) he has suffered an adverse employment action; and 3) there is a causal link between the protected expression and the adverse action. See, e.g., <u>EEOC v. Dinuba Medical Clinic</u>, 222 F.3d 580, 586 (9th Cir. 2000). Under <u>McDonnell Douglas</u>, if the plaintiff makes out a prima facie case, the burden of production shifts to the defendant to give a legitimate nondiscriminatory reason for the adverse action and, if the defendant does so, the burden returns to the plaintiff to prove pretext. See, e.g., <u>Coons v. Secretary of the U.S. Dept. of the Treasury</u>, 383 F.3d 879, 887 (9th Cir. 2004).

Oman asserts that a more analogous standard is the one applicable to claims asserting interference with, restraint, or denial of the exercise or attempted exercise of rights provided under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1). Department of Labor regulations interpret "interference" to include discouraging an employee from exercising his or her rights. 29 C.F.R. § 825.220(b). See also <u>Liu v. Amway Corp.</u>, 347 F.3d 1125, 1132 (9th Cir. 2003).[1]

---

[1] The Department of Labor interprets "interference" to include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). In <u>Liu</u>, the court considered the employee's argument that the employer interfered with her FMLA rights by 1) denying and mischaracterizing her FMLA leave and 2) using her protected leave as a factor in its decision to terminate her. The court noted that DOL regulations clearly state that an employer interferes with an employee's rights under FMLA by "refusing to authorize FMLA leave" and "discouraging an employee from using such leave." <u>Liu</u> at 1134. The court said, "It follows that an employer has discouraged an employee from taking FMLA leave when

A prima facie case under this statute is essentially the same: 1) engaging in protected activity; 2) an adverse employment action; and 3) a causal relationship between the adverse action and the exercise of the protected right. See, e.g., <u>Bachelder v. America West Airlines, Inc.</u>, 259 F.3d 1112, 1125 (9th Cir. 2001)(to succeed on a FMLA interference claim, plaintiff must show by a preponderance of the evidence that the taking of FMLA protected leave constituted a negative factor in the decision to terminate or visit other adverse employment actions upon the plaintiff). But the Ninth Circuit has expressly rejected the use of the <u>McDonnell Douglas</u> burden-shifting framework in such claims. <u>Bachelder</u>, 259 F.3d at 1124.

I conclude that the <u>McDonnell Douglas</u> burden-shifting standard is inapplicable to Oman's IDEA retaliation claim, because employment discrimination claims are asserted in the context of at-will employment. The evidentiary burdens placed on an employee who has suffered an adverse employment action are not appropriate in the context of a plaintiff who asserts, as here, that a public agency, not her employer, hindered the free exercise of her statutorily-guaranteed rights. For Oman's retaliation claims, I adopt the FMLA "interference" standard as articulated in <u>Bachelder</u>. The issues of whether PPS has proffered a legitimate reason for its actions, and whether Oman has overcome that showing by proving that PPS's stated reasons for its actions are pretextual, are not part

his or her supervisor interferes with the length and dates of leave, including denying leave outright." <u>Id.</u>

of that standard.

**PPS Defendants' Motion for Summary Judgment**

The four claims that remain in the case against the PPS defendants are counts 1 and 9 in No. 05-558 and counts 1 and 17 in No. 05-1715. Some of the allegations encompassed in these claims are challenges to the findings and conclusions of the hearings officers (ALJs) in two due process hearings conducted by ODE; others are allegations of retaliation against Pat Oman by the defendants.

I.   Factual and Procedural Background

A.   DP 04-110

On March 16, 2004, Pat Oman filed a request for a due process hearing. ODE ALJ Betty Smith presided over the eight-day hearing. ALJ Smith issued findings of fact and conclusions of law in an 84-page corrected final order dated March 31, 2005.

The primary focus of Oman's complaint in DP 04-110 was C.O.'s April 2002 IEP. In her final order, ALJ Smith rejected Oman's claim that C.O. had not been provided a free appropriate public education (FAPE) as required by the IDEA, with some exceptions, for which ALJ Smith ordered relief.

        1.   Placement. ALJ Smith found that C.O.'s April 2002 IEP was properly developed. ALJ Smith upheld PPS's refusal to place C.O. at a magnet or a vocational school as requested because these were not "placements" as defined under the IDEA. Oman had been advised by PPS that she could apply to

OPINION AND ORDER Page 8

transfer C.O. to the magnet or the vocational school, both of which accepted special ed students, but C.O., like many other students who apply for such transfers, was not accepted at either school. The ALJ found that students, including those eligible for special education do not have a "right" to vocational education on demand.

2.   FAPE. C.O.'s April 2002 IEP offered him a FAPE as required by the IDEA, and did not contain "vague and unmeasurable goals."

3.   Prior written notice. ALJ Smith found that PPS failed to provide Oman with the required prior written notice of its rejection of her requests for keyboarding and handwriting instruction, and of its rejection of her request for counseling and for a vocational educational curriculum.

4.   IEP Implementation. ALJ Smith found that PPS did not observe C.O.'s progress in communication in the classroom and did not prove how much math instruction he received.

5.   Assessment for Regression and Extended School Year Services (ESY). PPS adequately assessed C.O. for regression, but did not provide prior written notice of the denial of ESY.

6.   Records Requests. ALJ Smith found that PPS did not comply with its obligation to provide Oman with all

1    of C.O.'s education records in a timely fashion.

2    7.   <u>Reimbursement for Independent Educational</u>

3         <u>Evaluation (IEE)</u>. ALJ Smith found that PPS had

4         offered to reimburse Oman for an IEE she obtained

5         if the matter remained confidential and if

6         reimbursement would not be considered a precedent.

7         Oman rejected the offer, but was reimbursed anyway

8         about a year after she first requested

9         reimbursement. ALJ Smith found that a school

10        district may not require a parent to access his or

11        her insurance to pay for an IEE, but that it is not

12        impermissible for a school district to ask the

13        parent to do so. ALJ Smith found that PPS's policy

14        requiring the parent to pay in advance was not a

15        violation of the IDEA.

16    8.   <u>CIM/CAM Academy</u>. ALJ Smith found that there was no

17        decision not to place C.O. in the CIM/CAM Academy

18        in summer 2002 as Oman alleged; Oman failed to

19        submit an application to have C.O. attend the

20        academy and did not ask the IEP team to include the

21        academy in C.O.'s IEP.

22    9.   <u>Three Year Evaluation</u>. ALJ Smith found PPS's

23        evaluation was adequate.

24    ALJ Smith ordered some remedial relief against PPS:

25    1.   By June 10, 2005, PPS was required to provide

26        training to its staff on prior written notice

27

28    OPINION AND ORDER Page 10

requirements, how to respond to records requests, and what must be done if staff concluded a change in an IEP might be necessary to ensure provision of a FAPE.

2.  PPS was required to "offer C.O. 4,000 minutes of compensatory education in math, to be provided in the summer of 2005 or, if the parents and the District agree, at another time."

On November 4, 2005, ODE determined that PPS had met its obligations under ALJ Smith's order, stating that PPS had submitted documentation that it had conducted the required training. ODE found that although C.O. had not received the 4,000 minutes of compensatory math education, PPS had complied with ALJ Smith's order by *offering* the compensatory services.

> The District offered compensatory education services in accordance with the final order. The District reasonably tried to accommodate the parent's preferences regarding scheduling these services during the summer of 2005, and made a reasonable offer to provide the services beginning no later than October 15, 2005. The parent did not accept these offers. The Department concludes that the District has satisfied the requirement to offer compensatory education services in math.

The finding by ODE that PPS had met its obligations under ALJ Smith's order by "offering" the compensatory math education no later than October 15, 2005, but never actually providing it, is one of the acts Oman alleges to be retaliatory.

B.  DP 05-106

On April 5, 2005, Oman filed another request for a due process hearing, based on C.O.'s 2003 IEP. ALJ Bernadette House was

OPINION AND ORDER Page 11

1  assigned to the case. The hearing lasted four days. After the

2  hearing, ALJ House issued findings of fact and conclusions of law

3  in a 27-page corrected final order.

4       In her final order, ALJ House concluded that PPS had met its

5  obligations to C.O., including prior written notice as required,

6  and providing C.O. with a FAPE. Although ALJ House found that PPS

7  had failed to provide Oman access to all of C.O.'s records, she

8  determined that the failure to provide access "did not prevent

9  Parent from participating in the development of the April 17, 2003

10  IEP." The reason for this finding was that Oman had reviewed the

11  records before the IEP meetings. No remedies were ordered.

12       C.   DP 05-116

13       By letter dated June 28, 2005, Oman filed a third request for

14  a due process hearing.[2] ODE received the request, according to its

15

16       [2] The letter set out five issues for resolution. The first
    was based on IDEA, and was stated as follows:

17        Whether the District's progress reports from March 2001
          to June 2004 did not accurately inform the parents of

18        the extent to which C.O.'s progress was insufficient to
          enable C.O. to achieve his goals by the end of each

19        school year, because the progress reports were
          incomplete, misleading, or not done at all; and whether

20        this allege failure to provide accurate progress
          reports prevented the parents from meaningful

21        involvement in the IEP development process.

22  The second was based on Section 504 of the Rehabilitation Act and
    the issue was stated as follows:

23        Whether PPS subjected C.O. to an abusive environment
          during the time of C.O.'s enrollment in Fernwood Middle

24        School, from September 1999 to June 2002, by allowing
          other students to insult him; and whether his placement

25        at Grant High School, among the same students, was
          appropriate and constituted placement in a least

26        restrictive environment.

27  The third issue was based on IDEA and is stated as follows:

28  OPINION AND ORDER Page 12

date stamp, on July 5, 2005. The 2004 Amendments to the IDEA (IDEIA 2004) had imposed on parents requesting a due process hearing the requirement that they provide a description of the nature of the problem, the facts relating to the alleged problem or problems, and a proposed resolution of the problem. IDEIA 2004 was passed in December 2004, and took effect on July 1, 2005. However, federal rules implementing IDEIA 2004 were not adopted until October 13, 2006, and Oregon did not file state administrative rules implementing IDEIA until April 25, 2007.

After Oman requested the due process hearing, PPS filed a motion asking ODE to determine whether her request for a due process hearing met the IDEIA 2004 criteria for a due process

Whether the District's failure to respond to parental requests for information, evaluations, IEP meetings, and services, from 1997 to the present, prevented the parent from meaningful involvement in the IEP development process.

The fourth issue was based on IDEA and is stated as follows:
Whether the District should reimburse the parents for educational services and experiences privately obtained from July 2003 through June 2004.

The fifth issue was based on IDEA and Section 504 and is stated as follows:
Whether the District's alleged failure to assess C.O. in all areas related to the suspected disability, from 1996 to the present, resulted in a denial of FAPE; and whether the District's failure to provide an individualized education program for the school years 1996-1997, 1997-98, and 1998-1999 was also a denial of FAPE.

Oman ended her letter as follows:
If you determine that the above issues are time-barred, fail to state a claim, have already been adjudicated, or are outside the purview of your authority to conduct an administrative due process hearing, please let me know by writing to me at the address below.

OPINION AND ORDER Page 13

1   notice. IDEIA 2004 was not yet in effect as of the date of Oman's
2   letter requesting the hearing, and had been effect for only five
3   days on the date ODE received the letter. ALJ Dee Anna Hassanpour
4   decided the motion in PPS's favor on July 20, 2005. ALJ Hassanpour
5   dismissed the due process complaint notice on the ground of
6   insufficiency. ALJ Hassanpour found that the description of the
7   nature of the problem in the third issue was adequate, but that the
8   facts as presented in Issue 3 were "overly broad and do not contain
9   enough specific enough [sic] information to allow the District to
10  adequately prepare for hearing." ALJ Hassanpour noted that the time
11  span alleged was nearly eight years and that Oman had failed to
12  provide relevant dates.

13      With respect to Issue 4, Hassanpour found that Oman had failed
14  to give an adequate description of the problem or of the facts
15  related to the problem. She noted that the "issue does not contain
16  a problem, much less a description of the nature of the problem. It
17  merely states a question..." Id. at p. 3. ALJ Hassanpour found
18  further that the due process request also failed to provide facts
19  specific enough to allow PPS adequately to prepare for hearing, as
20  the time period covered almost four years, failed to specify what
21  educational services should be reimbursed, and failed to specify
22  what educational experiences should be reimbursed. Id.

23      As for Issue 5, ALJ Hassanpour found that the nature of the
24  problem was adequately described, but that the facts were not,
25  because the time span was nearly nine years and the complaint
26  failed to specify the type of "suspected disability" at issue.

27

28  OPINION AND ORDER Page 14

In conclusion, Hassanpour wrote that

> [T]he parent of C.O. may file an amended notice only with the written consent of the District and allow the District the opportunity to resolve the amended complaint through the resolution process set forth in Sec. 615(f)(1)(B)[of the 2004 IDEIA]; or the parent of C.O. may petition the undersigned administrative law judge for permission to amend this complaint.

Id. at p. 4. Oman testified at her deposition that she did not attempt to file an amended complaint. Although PPS and ODE use this conduct against her in their arguments that she failed to exhaust her claims administratively, the record contains factual issues about whether Oman ever received any guidance from ODE on how to go about filing an amended due process request, and in fact whether ODE made it unusually difficult for Oman to obtain necessary information.

    D.    DP 106-116.

On June 2, 2006, Oman again attempted a request for a due process hearing.[3] Again PPS moved against the notice for lack of

---

[3] Her letter posed the following issues:
1.    Whether the IEP written for C.O. in June 2004 failed to provide a free and appropriate education because the parents were prevented from meaningful involvement in the IEP process.
2.    Whether the June 2004 IEP was adequate, addressed C.O.'s needs, and whether what was written into the IEP was implemented.
3.    Whether the progress reports done from June 2004 to June 2005 were inaccurate, misleading, or not done at all.
4.    Whether PPS failed to provide adequate prior written notice of refusals for services, accommodations, training, and objectives requested by the parent and by his attorney during the development of the 2004 IEP.
5.    Whether PPS should reimburse the parents for educational services privately provided from June 2004 to June 2005.

OPINION AND ORDER Page 15

1  sufficiency under IDEIA 2004, and again an ODE ALJ, David
2  Gerstenfeld, decided the motion in PPS's favor. The ruling was
3  similar to that of ALJ Hassanpour. Oman did not attempt to file an
4  amended complaint.

5  II. <u>Claim 1, Case No. 05-558</u>

6      For this claim, Oman alleges that the PPS defendants violated
7  her rights under the IDEA by denying her 1) the right to
8  participate meaningfully in the development of her child's IEP, 2)
9  the right to be free of coercive preconditions for IEE
10 reimbursement, and 3) the right to an administrative due process
11 hearing. Second Amended Complaint ¶ 31. PPS and Oman agree that the
12 issues one and two of this claim were addressed in the
13 determinations of the ALJs in DP 04-110 and DP 05-106. The court
14 must therefore decide whether to affirm the rulings of the ALJs.

15     Oman has submitted no evidence to support her assertions that
16 the ALJs' determinations on these two issues were incorrect. She
17 has submitted a declaration, but the declaration does not contain
18 any statements of fact sufficient to provide an evidentiary basis
19 for reversing the rulings of the ALJs.

20     There is no evidence to support a claim that ALJ Smith erred
21 with respect to whether Oman was given the right to "participate
22 meaningfully" in C.O.'s 2002 IEP. ALJ Smith found that PPS had
23 failed to provide Oman the required written notice that it was
24 rejecting her requests for keyboarding and handwriting instruction,
25 counseling, a vocational educational curriculum, and an extended

26 ───────────────────────

27

28 OPINION AND ORDER Page 16

school year; the ALJ found further that PPS had failed to provide Oman with all her child's educational records in a timely fashion. ALJ Smith ordered relief in the form of requiring PPS to provide its employees with additional training on the provision of records and notices to parents. Oman has not made a showing that ALJ Smith's findings and the relief ordered were incorrect or inadequate.

In DP 05-106, ALJ House found that PPS had provided Oman with adequate prior written notice, and that although PPS had failed to provide Oman access to all of C.O.'s records, the failure did not prevent Oman from participating in the April 17, 2003 IEP because Oman reviewed the records before the IEP meetings. Oman has not made a showing that ALJ House's findings were incorrect.

The record establishes that Oman was reimbursed for the IEE, without a confidentiality condition. ALJ Smith held, in DP 04-110, that PPS was not permitted to require a parent to submit a claim for an IEE to the parent's insurer. There is no evidence in the record that PPS did so. I find no basis in the record for overruling the ALJ. PPS is entitled to summary judgment on the first two parts of Claim 1 in No. 05-558.

With respect to the third issue, the denial of Oman's right to a due process hearing, PPS argues that the claim has not been exhausted, so that the court does not have jurisdiction over it. PPS argues further that, even if exhaustion did not apply to this claim, there is no evidence that any PPS defendant denied Oman a right to a due process hearing. I agree with the latter argument.

OPINION AND ORDER Page 17

As the adverse party in the due process hearings, it was not within PPS's power to deny Oman her right to a due process hearing; this could only be done by ODE. The question of whether ODE properly dismissed Oman's due process requests in DP 05-116 and DP 06-116 will be taken up in the discussion of the ODE defendants' motion for summary judgment. The PPS defendants are entitled to summary judgment on the third part of Claim 1 in No. 05-558.

I conclude that PPS is entitled to summary judgment in its favor on Claim 1 of No. 05-558.

III. <u>Claim 9, Case No. 05-558.</u>

This is an IDEA retaliation claim. For that claim, Oman alleges that as a result of her "frequent complaints," she "incurred the personal animosity" of the PPS defendants. Complaint ¶ 59. She alleges further that in retaliation for her complaints, the PPS defendants "knowingly and individually prevented plaintiff's access to ... fair and impartial administrative due process hearings, unreasonably delayed reimbursement for an IEE, accessed the Plaintiff's insurance without prior authorization, and denied access to educational records." <u>Id.</u> at ¶ 60.

PPS moves against this claim on the basis of failure to exhaust, citing a First Circuit case, <u>Weber v. Cranston School Committee</u>, 212 F.3d 41, 51 (1st Cir. 2000), which in turn quotes 20 U.S.C. § 1415(b)(6)(IDEA complaint provision extends to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."). PPS argues that because Oman did

OPINION AND ORDER Page 18

1  not raise the retaliation claim in the due process hearing, she is

2  barred from raising it here.

3       According to Oman's declaration, on the first day of the

4  hearing in DP 05-106, there was "extensive discussion" of a motion

5  made by her to "add several issues to be considered, including the

6  question of PPS retaliation." Oman Declaration ¶ 8. The motion was

7  unopposed by PPS, although according to Oman, PPS counsel said that

8  "by not filing a specific response to the rather extensive motion

9  to expand the issues, I certainly wasn't conceding that they were

10 appropriate." Id. According to Oman, "At no time during the

11 administrative proceedings for DP 05-106 did PPS argue that they

12 wanted to have this issue addressed in the due process hearing. The

13 motion was denied by ALJ House because it was "untimely." Id.

14      This testimony creates a fact issue on whether Oman attempted

15 to exhaust the retaliation issue in DP 05-106, only to have her

16 motion denied by ALJ House. PPS's motion for summary judgment on

17 the basis of Oman's failure to exhaust this claim is denied.

18      Oman's retaliation allegations are that PPS 1) "knowingly ...

19 prevented plaintiff's access to ... fair and impartial

20 administrative due process hearings, 2) unreasonably delayed

21 reimbursement for an IEE, 3) accessed the Plaintiff's insurance

22 without prior authorization, and 4) denied access to educational

23 records." The second and third allegations, dealing with the IEE,

24 do not support a retaliation claim. The circumstances surrounding

25 the IEE were considered by ALJ Smith in DP 04-110. According to ALJ

26 Smith's findings, Oman was ultimately reimbursed by PPS for the

27

28 OPINION AND ORDER Page 19

IEE, despite Oman's refusal to enter into a confidentiality agreement, about a year after requesting the payment. ALJ Smith found that PPS's policy requiring the parent to pay for an IEE in advance was not a violation of the IDEA. Oman acknowledged at oral argument that PPS did not access her insurance to pay for the IEE. On the record before me, I am unable to determine whether a one year delay in reimbursement is unreasonable; the record does show that Oman was reimbursed, without having to comply with "coercive preconditions" such as entering into a confidentiality agreement or allowing PPS access to her health insurance.

But Oman's allegations that PPS retaliated against her by preventing Oman's access to "fair and impartial" due process hearings, and denying her access to educational records are sufficient to support a retaliation claim.

In the context of a retaliation case against an employer, an adverse action extends beyond workplace-related or employment-related conduct, and includes acts that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co. v. White, __ U.S. __, 126 S.Ct. 2405, 2412-13 (2006). See also Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)(employment action is adverse in retaliation claim if it is "reasonably likely to deter employees from engaging in protected activity.") Although the case at bar is not a retaliation claim against an employer, the court adopts the standard defining adverse action as conduct that might dissuade a reasonable person from engaging in protected activity.

OPINION AND ORDER Page 20

1    Such   conduct,   under   the   broad   statutory   and   regulatory
2    interpretations  of  FMLA,  would  include  not  only  acts  that  could
3    reasonably deter a person from exercising her rights, but also acts
4    that  impede  the  exercise  of  those  rights,  such  as  procedural
5    obstacles.  I  consider,  therefore,  whether  Oman  has  demonstrated
6    that PPS engaged in conduct that might have dissuaded, deterred or
7    impeded  a  reasonable  person  from  pursuing  her  rights  under  the
8    IDEA.

9    Oman has alleged that Constance Bull, PPS's counsel, told her,
10   prior to the first due process hearing, DP 04-110, that she was not
11   allowed to contact C.O.'s teachers or staff about the due process
12   hearing or the complaint. LeClair Declaration, Exhibit 1 Oman dep.
13   115: 12-15, 121:6-21. PPS does not deny this allegation, arguing
14   only that Oman testified she understood the restriction to apply
15   "only to matters relating to the hearing," not to C.O.'s current
16   schooling. PPS Reply Memorandum, p. 13.

17   It is immaterial whether Oman understood Bull's prohibition on
18   her contacting PPS teachers or staff to apply to Oman's complaints
19   about C.O.'s IEP and the issues raised in the due process hearing
20   of 2004 rather than any "current" educational issues. PPS has not
21   cited the court to any provision of the IDEA which permits school
22   district attorneys to prohibit parents from contacting or speaking
23   to district witnesses in preparation for a due process hearing. A
24   reasonable  factfinder  could  conclude  that  Bull's  prohibition  on
25   Oman's contacting any PPS teachers or staff could reasonably have
26   ///

27

28   OPINION AND ORDER Page 21

deterred and impeded Oman from advocating for her son at the due process hearing.

Oman alleges that PPS created difficulties for her in getting access to C.O.'s educational records before the 2004 due process hearing. LeClair Declaration, Exhibit 1 (Oman dep.)125:1-11. PPS asserts that it is entitled to summary judgment on this claim because "that issue was addressed in a thorough fashion by the administrative process already." Indeed it was. In DP 04-110, ALJ Smith found that PPS had failed to timely provide Oman with her son's complete educational records. In a subsequent due process hearing, DP 05-106, ALJ House found that PPS had again failed to provide Oman access to all of C.O.'s records. PPS has not articulated any reason the court should not affirm these findings by ALJs Smith and House. It is therefore factually undisputed that PPS failed to give Oman timely access to her son's complete educational records. Although PPS argues that the failure to provide records was the result of "miscommunication," a reasonable factfinder could conclude that PPS's failure to provide Oman with C.O.'s complete educational records before the due process hearings in 2004 and 2005 reasonably deterred and impeded Oman from pursuing her own and her son's IDEA rights. The inference is strengthened by Bull's prohibition on Oman's contacting any PPS witnesses before the 2004 due process hearing.

PPS argues that none of this conduct is causally connected to any protected activity. I disagree. Constance Bull, an attorney who represented PPS at the 2004 due process hearing, directly

prohibited Oman from contacting PPS witnesses before the 2004 due process hearing. The causal connection between the protected activity (Oman's pursuit of due process rights under the IDEA), and PPS's preventing Oman access to her child's teachers, staff, and educational records, is supported by both temporal proximity and cause and effect, the subject matter of the prohibitions relating directly to the topics to be resolved at the due process hearing. This conduct, if true, could be found to deter and impede a reasonable person from pursuing activity protected under the IDEA.

PPS is not entitled to summary judgment on the retaliation claim.

III. Claim 1, Case No. 05-1715

For this claim, Oman alleges that the PPS defendants violated her rights under the IDEA by denying her "the right to participate meaningfully in the development of her child's IEP and the right to an administrative due process hearing." Complaint ¶ 68. According to PPS, Oman testified at her deposition that the two issues in this claim relate to C.O.'s 2004 and 2005 IEPs, issues she attempted to raise in her two unsuccessful requests for due process hearings. LeClair Declaration, Exhibit 2, Oman dep. 63:7-20. PPS argues that these claims remain unexhausted because Oman did not seek to amend her complaints.

PPS's argument that these claims should be dismissed because they are unexhausted is without merit. State defendant Suzy Harris testified in an affidavit that ODE issued a revised procedural

safeguards notice[4] in July 2005 based on IDEIA 2004. Harris Affidavit ¶ 9. Harris does not specify what date in July the revised Notice was issued, but in any event, Oman would not have had the benefit of this revised Notice on June 28, 2005, when she wrote her due process hearing request in DP 05-116.

The due process request in that case was dismissed by the ALJ on July 20, 2005. Oman has proffered an e-mail she wrote to Harris on July 20, 2005, copied to Valerie Miller and Andrew Logerwell, who was at that time representing the state defendants in this case. Oman wrote:

> This is a request for public records. Per the amended IDEA, 20 USC 1415(a), you have established procedures (in accordance with the provisions of IDEIA) to guarantee procedural safeguards for children with disabilities and their parents. Please send me a copy of those procedures. I am not interested in the OLD procedures, which I already have, but in the new ones that implement the provisions of IDEIA. Please forward this request to whoever in your agency is responsible for responding to public records requests if you are not the correct people to be addressing this to.

Oman Declaration, Exhibit 1. The IDEA requires that procedural safeguards notices are to be given to the parents "upon request." 20 U.S.C. § 1415(d)(1)(A)(iii). In response to her request, Oman received an e-mail from Logerwell, as follows:

> Now that there is a lawsuit pending, the most productive way to get documents is through a request for production. Under normal circumstances, if you were an attorney you

---

[4] Under the IDEA, a procedural safeguards notice must include a full explanation of procedural safeguards, written in an "easily understandable manner," "under regulations promulgated by the Secretary" relating to, among other things, the opportunity to present and resolve complaints and due process hearings. 20 U.S.C. § 1415)(d)(2).

OPINION AND ORDER Page 24

would not be allowed to contact a represented party
directly during the litigation. Since you are requesting
documents for use in this litigation it would make me a
lot more comfortable if you would go through me via a
request for production. ...

Oman Declaration, Exhibit 1. ODE's refusal to provide Oman with a

procedural safeguards notice except by means of a request for

production violated the plain terms of the IDEA.

According to Harris's affidavit, the ODE issued another

revised procedural safeguards notice in October 2006, based on the

federal regulations that became effective October 2006, along with

a sample Procedural Safeguards Notice from the U.S. Department of

Education. Id. at ¶ 9.[5] Although Harris states that the "procedural

Safeguards Notice is provided to each parent of a child with

disabilities under the IDEA at least once a year and upon filing of

a due process hearing or complaint,"[6] there is no evidence that

Oman ever got one when she filed her due process requests in 2005

and 2006; in fact, the evidence suggests otherwise, since Oman's

2005 request to Harris was forwarded by Harris to Logerwell.

///

---

[5] The IDEA requires that notices of procedural safeguards
include explanations of procedural safeguards under regulations
promulgated by the Secretary. 20 U.S.C. § 1415(d)(2). It is
doubtful, therefore, that the ODE's July 2005 notice of
procedural safeguards, purporting to conform to IDEIA 2004 but
provided by ODE before October 2006, when the federal regulations
for IDEIA 2004 were promulgated, was in compliance with the IDEA.

[6] Under the IDEA, the state educational agency is required
to provide procedural safeguards notices to parents once a year,
and upon initial referral or parental request for evaluation, and
upon the first occurrence of the filing of a complaint, and upon
request by a parent. 20 U.S.C. § 1415(d)(1)(A).

OPINION AND ORDER Page 25

1    I find Logerwell's characterization of Oman's request for
2    ODE's Procedural Notice of Procedural Safeguards as "documents for
3    use in this litigation" dubious. A more accurate characterization
4    is that Oman was requesting documents which the ODE was statutorily
5    required to provide her, on request, for use in administratively
6    pursuing a due process hearing. I therefore decline to penalize
7    Oman for ultimately abandoning her effort to learn what was
8    procedurally required in order to request due process hearings in
9    2005 and 2006.

10    Alternatively, the PPS defendants argue that this claim should
11    fall on summary judgment because the claims are "unsupported." They
12    argue that there are benign explanations for Oman's factual
13    allegations in support of her claim that she was denied the right
14    to participate meaningfully in the development of C.O.'s 2004 and
15    2005 IEPs.

16    Oman's first allegation is that she was told by Constance Bull
17    to put her "concerns or complaints" in writing at C.O.'s April 2005
18    IEP. LeClair Exhibit 2, Oman dep. 63:19-64:5, 64:9-65-65:7. Bull
19    has testified that she has asked parents other than Oman to submit
20    written lists of formal IEP requests. LeClair Declaration, Exhibit
21    3, Bull dep. 63:19-64:5. Although Oman has alleged that Bull
22    insinuated this requirement was directed solely at her, Complaint,
23    No. 05-1715 ¶ 22, Oman has proffered no evidence from which the
24    court could discern how Bull's request for written documentation
25    denied Oman meaningful participation in the IEP.

26    Oman has testified that she wrote letters to C.O.'s IEP team
27
28    OPINION AND ORDER Page 26

containing written comments and questions about C.O.'s April 2005 IEP, that were not answered. LeClair Declaration, Exhibit 2, Oman dep. 65:2-7, 66:17-23. Oman identified these as letters dated May 23, May 26, June 12, September 15, and October 17, 2005. Id. These letters are attached to the Bull Declaration as Exhibits 4, 5 and 6.

PPS does not deny that it failed to respond to Oman's letters. PPS argues, however, that Oman has not explained why PPS was legally obligated to answer every question posed in a letter or why PPS's alleged failure to answer some of them prevented her meaningful involvement in C.O.'s 2005 IEP.

The May 26, 2005 letter has attachments, including C.O.'s test scores from Sylvan Learning Center and articles on educating children with dyxlexia. The October 17, 2005 letter contains a questionnaire with many rhetorical questions. ("Would most or many students in your class benefit from having their own laptops available for schoolwork?" "In your professional opinion, is a student better off with a computer at home, or without one?" "In your professional opinion are the samples [of C.O.'s writing ability provided at IEP meetings] representative of the average 11[th] grader's writing ability?" "Do [C.O.'s] low scores and slow progress mean that he does not have the ability to learn math as well as other students?" "C.O. went from a 5th grade level of understanding of math concepts and application, to an 11[th] grade level of understanding math concepts and application, as measured by the California Achievement Test, after 36 hours of

OPINION AND ORDER Page 27

individualized instruction at Sylvan Learning Center ... Does this rapid progress indicate that this type of individualized math instruction is appropriate for C.O.?")

PPS asserts that it offered to meet with Oman on a number of occasions to discuss concerns or questions, but she refused. Bull Declaration ¶ 9. Bull states, moreover, that the October 17 letter, for example, asked the respondent to assume "facts" that were "very much disputed," related to issues already addressed in the administrative due process hearings Oman had requested, or were unrelated to PPS's provision of a FAPE to C.O.

The evidence does not support Oman's assertion that PPS's failure to respond to the questions, arguments, and articles contained in these letters prevented her meaningful involvement in C.O.'s 2005 IEP.

Oman's third allegation in support of her claim that she was denied meaningful participation in C.O.'s 2004 and 2005 IEPs is that 2004 IEP meeting was "dominated by the lawyers." LeClair Exhibit 2, Oman dep. 72:5-13. The deposition testimony shows that the lawyers included Dana Taylor, who represented Oman and C.O., during C.O.'s 2004 IEP, and Constance Bull, representing PPS at the 2005 and 2006 IEPs. I agree that Oman has not demonstrated how the presence of lawyers prevented her meaningful participation in the IEP.

For the reasons already discussed, PPS, as an adverse party, could not deny Oman the right to an administrative due process hearing.

OPINION AND ORDER Page 28

1    PPS is entitled to summary judgment on claim one.

2  IV.  Claim 17, Case No. 05-1517

3    This is also an IDEA retaliation claim, in which Oman alleges

4  that in retaliation for her activist role and public criticism of

5  PPS and ODE, the PPS defendants prevented her meaningful

6  involvement in C.O.'s IEP and prevented her access to

7  administrative due process hearings.

8    PPS moves against this claim for failure to exhaust

9  administrative remedies. For the reasons stated, the exhaustion

10 argument is rejected.

11    PPS also moves against this claim on the merits, arguing that

12 this IDEA retaliation claim is similar to that in No. 05-558 except

13 that Oman has additional evidence she would offer to support her

14 allegations. Oman described this evidence as follows: 1) she did

15 not receive a response to her October 17, 2005 letter to PPS; 2)

16 she had communication problems with PPS; 3) Bull attended C.O.'s

17 IEP meetings after Oman filed the due process complaint and

18 dominated the meetings; 4) Oman was not given records she

19 requested; 5) Oman did not receive adequate notices between May and

20 October 2005; and 6) C.O. did not receive his 4,000 minutes of

21 compensatory math education ordered by ALJ Smith.

22    Allegations 1-3 do not support a retaliation claim, for

23 reasons already discussed.

24    The fourth allegation, assuming that it differs from the

25 allegation of failure to provide records in No. 05-558, is

26 unsupported by evidence indicating what records PPS failed to

27

28 OPINION AND ORDER Page 29

provide, or whether Oman was provided the records belatedly or not at all. In her declaration, Oman states,

> Plaintiff has addressed ... a multitude of communication problems that stemmed from the attempts of the parent to get information and the refusal of PPS to respond to those attempts. Plaintiff disagrees with the PPS that this is not an adverse action, particularly in light of the fact ... that the parent had been told she had to provide her input in writing, but then when the parent asked for PPS responses in writing, she didn't get any.

Oman Declaration attached to Response to PPS Defendants Motion for Summary Judgment, p. 32. The allegation is insufficient to support a retaliation claim.

Oman has proffered examples of PPS's 2005 written notices rejecting her requests for C.O.'s IEP, including a keyboarding goal; a goal in which C.O. would improve his math skills by four grade levels, with PPS to pay for instruction at Sylvan Learning Center if that goal was not met; a request for C.O. to be sent to the Sylvan Learning Center to receive specially designated instruction in math; a request that C.O. be provided a tape recorder, computer and calculator; and a request for a writing goal that would bring C.O. to 9th grade level as measured by the Woodcock Johnson test and improve his overall writing skills by four grade levels, as measured by the California Achievement Test, with C.O. to be sent at PPS expense to Sylvan Learning Center if these goals were not met. Oman Declaration, Exhibit 3. Oman contended at oral argument that these notices were inadequate because they did not define the "basis of the decision."

Each of the written notices proffered by Oman contains sections designated as follows:

OPINION AND ORDER Page 30

1.   "This action is proposed because." This caption is followed by a description of Oman's proposal.

2.   "This action is based on the following evaluation procedures, tests, records or reports." This caption is followed by an explanation of why the IEP team members believe that the requested goal is not reasonable as an annual goal and the alternative proposed by the IEP team. Each notice states that the action is based on "team discussion and review of records."

3.   "We rejected these options because:" This caption is followed by PPS's reason for rejecting the proposal.

Under the IDEA, written notices must include 1) a description of the action proposed or refused; 2) an explanation of why the district proposes or refuses to take the action and a description of *each evaluation procedure, assessment, record or report* the agency used as a basis for the proposed or refused action; 3) a statement that the parents of a child with a disability have protection under the procedural safeguards of the IDEA and the means by which a copy of a description of the procedural safeguards can be obtained; 4) sources for parents to contact to obtain assistance in understanding the provisions of the IDEA; 5) a description of other options considered by the IEP team and the reason why these options were rejected; and 6) a description of the factors that are relevant to the agency's proposal or refusal. 20 U.S.C. § 1415(c)(1)(A)-(F)(emphasis added). See also 34 C.F.R. § 300.503(b).

OPINION AND ORDER Page 31

1    The notices proffered by Oman do not comply with all the

2  provisions of the IDEA, particularly the requirement that the

3  district describe *each* evaluation procedure, assessment, record or

4  report used as the basis for the refusal. However, despite the fact

5  that the notices are not in full compliance with the IDEA, they do

6  not provide evidentiary support for a retaliation claim, because,

7  standing alone, the deficiencies in the notices are not sufficient

8  for a reasonable factfinder to conclude that because of them, Oman

9  was reasonably deterred from pursuing protected activity under the

10  IDEA.

11    Oman's fifth allegation is sufficient to support a retaliation

12  claim. According to a letter dated September 15, 2005, from Oman to

13  Lauretta Manning, speech pathology administrator for PPS and

14  apparently leader of the IEP team, Oman

> tried to get [C.O.] in for tutoring at the Melvin-Smith
> Learning Center over the summer, to satisfy the
> requirement for compensatory education that was ordered
> in a due process hearing, but that they had nothing
> available. They book up very early in the summer and by
> the time I was able to figure out [C.O.'s] summer
> schedule (a delay occasioned by work issues) they had no
> time left to work with him. I am still interested in
> having him get some tutoring through that organization
> (which is, incidentally, a nonprofit) and the folks at
> Melvin-Smith suggested that this could most easily be
> accomplished during the fall or winter, as their schedule
> is much more open during the times that school is in
> session. I would also consider having him there next
> summer. Does the school district have any objection to
> either of these options? If you are not the right person
> to ask, please forward this letter to whoever is.
>
> If I don't hear back from you by September 20, I'll
> assume that no reply will be forthcoming.

Oman Declaration, Exhibit 1.

OPINION AND ORDER Page 32

Copies of the letter were sent to Bull and Harris. There is no indication in the record whether Oman ever received a response to this letter from the recipient or from those who received copies. Oman states in her declaration that "no representative of the PPS ever answered these questions." Oman Declaration ¶ 1.

Nothing in the record explains why PPS told Oman the math instruction had to be obtained no later than October 15, 2005; the ALJ did not set this deadline, having only ruled that the compensatory education was to be provided by the summer of 2005 "or, if the parents and the District agree, at another time." The record does not reveal what efforts, if any, PPS made to provide C.O. with that compensatory math education during the summer of 2005 or at any other time. The only evidence in the record is the September 15 letter from Oman to Manning, which suggests that all the efforts to obtain the compensatory instruction for C.O. were being made by Oman.

PPS proffers a letter dated November 4, 2005, addressed to Mary Mertz, Special Education Director for PPS and signed by Suzy Harris, legal specialist for ODE. LeClair Declaration, Exhibit 15. The subject of the letter is "Verification of Implementation of Final Order" in DP 04-110. The letter recites that ODE has "verified completion of all corrective action" ordered by ALJ Smith in DP 04-110.

The letter states that ALJ Smith ordered PPS to "offer the student 4000 minutes of compensatory education in math to be provided in the summer of 2005 or, if the parents and the District

OPINION AND ORDER Page 33

agree, at another time." Id. at 2. The letter continues:

> The District offered compensatory education services in
> accordance with the final order. The District reasonably
> tried to accommodate the parent's preferences regarding
> scheduling these services during the summer of 2005, and
> made a reasonable offer to provide the services beginning
> no later than October 15, 2005. The parent did not accept
> these offers. The Department concludes that the District
> has satisfied the requirement to offer compensatory
> education services in math.

Id.

According to the affidavit of ODE defendant Harris, who signed the

letter:

> I also understand that when the ALJ awarded 4000
> compensatory minutes of services to plaintiff's son, she
> placed clear conditions on the award by requiring that
> the services be offered during the summer of 2005 unless
> the parties agreed otherwise. ... If the ALJ had not
> provided this timeframe for the compensatory services, it
> would have been impossible for ODE to monitor compliance
> of an open-ended award.

> Based on the evidence in the record, ODE concluded that
> 1) PPS had offered the compensatory services in the
> summer of 2005, but plaintiff had not accepted, 2) PPS
> and plaintiff had not come to an agreement by the end of
> the summer, but rather their negotiations had reached an
> impasse, and 3) PPS had made a further offer to provide
> services in October 2005 that the plaintiff had not
> accepted. ODE concluded that PPS was no longer obligated
> to provide the compensatory minutes because the summer
> had come to an end without the parties reaching an
> agreement. It appears to me that ODE's conclusion was
> consistent with the plain language of the ALJ's order,
> and any other conclusion would have gone beyond the plain
> language of the order, rendering the ALJ's conditions
> meaningless. Plaintiff never asked for modification or
> amendment of that order.

There is no admissible evidence in the record that PPS offered C.O.

the 4000 minutes of compensatory education in the summer of 2005 or

in the fall of 2005, or that Oman rejected such offers, as PPS's

counsel admitted at oral argument. There is no evidence in the

record to explain why the compensatory instruction was not provided

OPINION AND ORDER Page 34

to C.O. by Melvin-Smith Learning Center in the fall or winter of 2005, as Oman requested.

ALJ Smith ordered that the services be provided in the summer of 2005 "or ... at another time." There is no deadline, of October 15, 2005 or any other time, in the ALJ's order that C.O. be provided compensatory education. There is no evidence in the record that supports Harris's statement that it would be "impossible" for ODE to monitor compliance of the ALJ's award of the compensatory education and Harris offers no explanation for this statement.

The failure of PPS to comply with ALJ Smith's order that C.O. be offered compensatory math education, was conduct that a reasonable factfinder could conclude would likely deter Oman in the pursuit of her statutory rights under the IDEA. PPS's motion for summary judgment on the retaliation claim is denied.

### ODE Defendants' Motion for Summary Judgment

ODE has not, like PPS, divided its argument by claims asserted in the two cases. For consistency, ODE's argument is divided into the two areas already discussed: Oman's "meaningful involvement" claims and Oman's retaliation claims.

I.   "Meaningful involvement" claims

The heart of Oman's "denial of meaningful involvement" claim against the ODE defendants is the issue of whether she was provided adequate notice of the requirements for filing due process requests after IDEIA 2004. The state defendants assert two arguments against this claim, mootness and sovereign immunity.

///

OPINION AND ORDER Page 35

a.    <u>Mootness</u>

A case becomes moot when litigants' rights are no longer affected by the action which triggered the lawsuit. <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 528 (9th Cir. 1996); <u>Cammermeyer v. Perry</u>, 97 F.3d 1235 (9th Cir. 1996). See also <u>American Rivers v. National Marine Fisheries Serv.</u>, 126 F.3d 1118, 1123 (9th Cir. 1997)("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed.") A party asserting that an issue is moot must demonstrate that there is no reasonable expectation that the violation will recur. <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979).

The ODE defendants argue that Oman's claims are moot because ODE has "now properly adopted new Oregon Administrative Rules that comply with the IDEA 2004 amendments." The new Oregon administrative rules, according to the Harris affidavit, did not take effect until April 25, 2007. Oman's requests for due process hearings were dismissed on the basis of insufficiency in July 2005 and June 2006. The promulgation of administrative rules in 2007 does not remedy Oman's claim that she was denied her right to proper notification of her procedural rights in 2005 and 2006.

ODE has not directed the court to any statutory or regulatory authority requiring it to enforce the IDEIA 2004 due process notification requirements against Oman, even though her request for a hearing in DP 05-116 was dated June 28, 2005, *before* IDEIA 2004 took effect. The state defendants contend that ODE was required to enforce IDEIA 2004 as of its effective date, July 1, 2005, despite

OPINION AND ORDER Page 36

"potentially conflicting state regulations,"[7] because otherwise Oregon could have lost continued federal funding for its special education programs. The state defendants cite no evidence or legal authority to support this contention. ODE's leisurely process of adopting state administrative rules to implement IDEIA 2004--almost three years later--is inconsistent with a sense of urgency.

ODE also argues that it has now "taken steps to improve its notice to parents so that any previous inconsistencies about whether the old regulations applied or whether the IDEA 2004 amendments applied have now been eliminated." State defendants' Memorandum, p. 4. This argument is based on the statements of Harris in her affidavit that the ODE issued a revised Notice of Procedural Safeguards in July 2005, based on IDEIA 2004 and another in October 2006, based on the newly promulgated federal regulations. As discussed, there is no evidence that Oman was ever provided with the July 2005 revised Notice; in fact, the evidence is that Oman wrote a letter to Harris and others requesting the Notice, only to be referred to Logerwell, who told her to make a request for production. In any event, Oman's 2006 due process request was dismissed on June 22, 2006, well before the ODE's October 2006 revision of the Notice. LeClair Declaration, Exhibit 13.

///

_____

[7] The IDEA requires the Secretary of Education to provide a public comment period of at least 90 days on any regulation proposed under Subchapter I or Subchapter II of the IDEA. Subchapter II includes procedural safeguards. 20 U.S.C. § 1406(a).

ODE asserts that "based on the proper adoption of new state regulations in conformance with the IDEA 2004 amendments and based on ODE's improvements to its Notice of Procedural Safeguards, the remedy plaintiff seeks in this lawsuit has already been obtained." State defendants' Memorandum, p. 5.

The evidence indicates that ODE never provided Oman with adequate notice of the procedural requirements for a due process notice that was in compliance with IDEIA 2004, either before or after Oman's June 28, 2005 request for a due process hearing was dismissed on July 20, 2005. The ODE's October 2006 revision of the procedural rules, even if provided to Oman, had no effect on the dismissal of Oman's two due process hearing requests, which occurred on July 20, 2005 and June 22, 2006.

ODE acknowledges that its notification procedures were, until at least October 2006, "inconsistent." This admission, in combination with the fact that there were no state administrative rules implementing IDEIA 2004 until April 2007, is fatal to the ODE defendants' contention that the passage of state administrative rules conferred a remedy on Oman for her claim that she was denied her statutory right to a due process hearing in 2005 and 2006. There is no evidence that ODE ever provided Oman with adequate procedural safeguard notices based on IDEIA 2004, and she never received the due process hearings she requested.

But even assuming that Oman has not received relief for her claim, this does not dispose of the ODE's mootness argument. While the passage of new state regulations had no effect on Oman's claims

OPINION AND ORDER Page 38

that were dismissed in DP 05-106 and DP 05-116, the promulgation of new regulations does make it highly unlikely that the dismissals would recur. Consequently, it is not clear to the court *how* ODE's violation of Oman's IDEA procedural rights can be remedied. Oman's son, C.O., is now over 19 years old and has graduated from high school. Under the IDEA, a state "may provide that, when a child with a disability reaches the age of majority *** [,] all other rights accorded to parents under this subchapter transfer to the child." 20 U.S.C. § 1415(m)(1). Oregon's administrative rules provide:

> When a child with a disability reaches the age of majority under ORS 109.510 or 109.520, or is emancipated pursuant to ORS 419B.550 to 419B.558, the rights accorded to the child's parents under the special education laws transfer to the child.

OAR 581-015-0101(1).

Oman counters with evidence that ODE policies allow a student to transfer educational rights to the parent. See Transfer of Rights at Age of Majority, Exhibit 1, Plaintiff's Response to PPS Motion to Affirm. She also proffers a letter dated April 23, 2006 to PPS signed by C.O., stating that he wishes Pat Oman to be appointed as surrogate parent to assert his special education rights. She argues that C.O.'s request was "granted by default" when PPS did not respond to the letter.

But Oman's status as C.O.'s surrogate parent for purposes of the IDEA does not resolve the question of how any substantive benefit could be obtained by C.O. or by Oman if the court ordered ODE to reconvene the due process hearings that were dismissed in

OPINION AND ORDER Page 39

1  2005. I conclude that, because the court cannot grant effective
2  relief on this claim, it should be dismissed as moot.

3            b.    Sovereign immunity

4      The state defendants assert that sovereign immunity prevents
5  Oman from claiming in federal court that ODE failed to provide her
6  with adequate notification under the IDEA. The state defendants
7  argue that to the extent Oman's claims are based on a "perceived
8  failure" of ODE to "follow state regulations that may have
9  conflicted with the IDEA 2004 amendments," her claims are based in
10 state law, and must be brought in state court. State defendants'
11 Memorandum, p. 7-8.

12     I disagree that Oman's claim is based on a perceived failure
13 of ODE to follow state regulations that may have conflicted with
14 IDEIA 2004. Rather, I interpret Oman's claim as one asserting that
15 ODE failed to provide her with adequate notice of IDEIA 2004's new
16 due process notification requirements before and after ODE ALJs
17 dismissed her due process requests as insufficient under IDEIA
18 2004. Such a claim has nothing to do with the state regulations in
19 existence before April 2007 that may have conflicted with IDEIA
20 2004.

21     Oman made it clear to ODE in her July 20, 2005 e-mail to
22 Harris, Miller and Logerwell that she was requesting a copy of
23 procedures that reflected the notification requirements contained
24 in IDEIA 2004: "*I am not interested in the OLD procedures, which I*
25 *already have, but in the new ones that implement the provisions of*
26 *IDEIA.*" Oman Declaration, Exhibit 1 (emphasis added). Since Oman's

27

28 OPINION AND ORDER Page 40

request is for a procedural notice "that implement[s] the provisions of IDEIA," and not "the OLD procedures," her claim based on ODE's refusal to provide an IDEIA 2004 procedural notice has nothing to do with the preexisting "conflicting state regulations." The claim is not grounded in state law, and therefore is not barred by sovereign immunity.

Nor does Oman's claim even raise the issue of conflict, perceived or actual, between the federal 2004 IDEA regulations promulgated in October 2006 and state 2004 IDEIA regulations promulgated three years later in April 2007. Oman's claims are based on events that occurred before either the federal or the state administrative rules were promulgated. The state defendants' motion for summary judgment on the basis of sovereign immunity is denied.

II. <u>Retaliation claims</u>

Oman has alleged several bases for her retaliation claim against the state defendants: 1) ODE's refusal to investigate Oman's complaint that PPS required confidentiality agreements before reimbursing parents for IEEs; 2) ODE's failure to provide her with due process notification information relating to IDEIA 2004; 3) ODE's dismissal of her two due process hearing requests on the basis of IDEIA 2004, even though neither federal, nor state regulations implementing those 2004 amendments had yet been promulgated; 4) ODE's ratification of PPS's refusal to provide C.O. with the 4000 minutes of compensatory math education awarded by ALJ Smith in 2004; and 5) ODE's refusal to produce the

OPINION AND ORDER Page 41

administrative record in this case for over two years.

A.   Refusal to investigate reimbursement complaint

ODE argues that the reimbursement issue is moot. I disagree. Although Oman acknowledges that she has been reimbursed for the IEE, without a confidentiality agreement, this does not dispose of the question of whether ODE's refusal to investigate Oman's complaint about reimbursement constituted retaliation: i.e., whether ODE's refusal to investigate the complaint would have deterred a reasonable person from pursuing her rights under the IDEA.

ODE's stated reason for refusing to investigate the complaint was that Oman "provided no evidence whatsoever to show the existence of a systemic problem." ODE Memorandum, p. 10. ODE relies on Harris's affidavit:

> I believe ODE appropriately declined plaintiff's request for an investigation into whether confidentiality agreements were being commonly used throughout the state by school districts because plaintiff provided no evidence whatsoever of the alleged practice other than her own experience with Portland Public Schools.

Harris Affidavit ¶ 14. ODE acknowledges that under 34 C.F.R. § 300.662(b), a complaint must include both an allegation that a public agency has violated a provision of the IDEA and "[t]he facts upon which the statement is based." ODE points to nothing in the federal regulations which places on the complainant the burden of proving that the conduct complained of is "commonly used throughout

OPINION AND ORDER Page 42

the state,"[8] or requires the complainant to provide evidence "other than her own experience." ODE provides no legal authority and articulates no facts explaining why it placed the burden on Oman of showing a "systemic" violation as a condition of investigating her complaint. A reasonable factfinder could conclude that ODE's conduct would have deterred a reasonable parent from pursuing her right to seek investigation of practices she believed violative of IDEA.

B.    Failure to provide Oman with procedural safeguard notices consistent with IDEIA 2004

ODE has not proffered any evidence that it ever complied with Oman's requests for the due process notification requirements of IDEIA 2004, and has not cited the court to any authority supporting its failure to provide Oman with a notice of procedural safeguards consistent with IDEIA 2004. ODE acknowledges that the state regulations in place at the time Oman made her due process requests were "inconsistent" with IDEIA 2004. The absence of any legal justification for its failure to provide Oman with a notice of procedural safeguards consistent with IDEIA 2004, along with ODE's dismissal of two due process requests on the ground of IDEIA 2004 insufficiencies, enable a reasonable factfinder to conclude that ODE's conduct reasonably deterred Pat Oman from pursuing her

---

    [8] If ODE's proposed standard were to apply, it is difficult for the court to imagine how the parent of a child in the Portland school district could prove that the practice in the Portland school district is "commonly used throughout the state." Moreover, such a standard would suggest a parent not subject to such a practice in his or her own district could nonetheless force ODE to investigate commonly used practices in other districts.

OPINION AND ORDER Page 43

statutory right to due process hearings.

        C.   <u>ODE's ratification of PPS's refusal to provide C.O. with compensatory math education</u>

ODE ratified PPS's refusal to provide C.O. with the 4,000 minutes of compensatory math instruction ordered by ALJ Smith. No evidence in the record supports ODE's findings in support of its ratification. There is no evidence that PPS "offered compensatory education services in accordance with the final order," as ODE found. Declaration of Sarah LeClair, Exhibit 15. There is no evidence that PPS "reasonably tried to accommodate the parent's preference regarding scheduling these services during the summer of 2005," as ODE found. <u>Id.</u> There is no evidence that PPS "made a reasonable offer to provide the services beginning no later than October 15, 2005," as ODE found. <u>Id.</u> There is no evidence that Pat Oman failed to "accept these offers," as ODE found. <u>Id.</u> Harris's explanation that it would have been impossible for ODE to monitor compliance of an "open-ended award," is illogical because ALJ Smith's award <em>was</em> open-ended. There is no evidence in the record that explains why it would have been "impossible" for ODE to monitor ALJ Smith's award. Indeed, simply counting the hours as they were provided would have sufficed.

In the absence of any factual, legal or logical explanation for ODE's ratification of PPS's refusal to comply with ALJ Smith's order, a reasonable factfinder could conclude that ODE's findings had the effect of deterring Oman from further pursuing her son's right to the compensatory education.

///

OPINION AND ORDER Page 44

1              D.   <u>Refusal to file administrative record</u>

2         Oman contends that the state defendants retaliated against her

3    by delaying for two years her request that the administrative

4    record for DP 04-110 be filed with the court. The state defendants

5    rely on the affidavit of Harris, a lawyer, who states,"Any delay

6    that may have occurred in producing the administrative record

7    occurred only because of the complicated and confusing nature of

8    this lawsuit."

9         The complaint in No. 05-1715 alleges that on or about July 18,

10   2005, Oman requested that ODE send the administrative record for DP

11   04-110 to this court. Complaint ¶ 33. Oman alleges further that by

12   letter dated October 28, 2005, Harris informed Oman that ODE had

13   determined that No. 05-558 was not an appeal of DP 04-110 because

14   "'[y]ou request a jury trial, which is not provided for under the

15   IDEA. You request damages which, in the Ninth Circuit, are not

16   available under the IDEA.'" <u>Id.</u>; Exhibit 1 to Complaint (letter

17   dated October 28, 2005 from Suzy Harris to Pat Oman). The letter

18   continues, "After reviewing your complaint and amended complaint,

19   the Department does not find any basis for concluding that your

20   complaint is an appeal of your due process hearing decision." <u>Id.</u>

21        Oman alleged in her complaint that in refusing to forward the

22   record, Harris was in violation of 34 C.F.R. § 300.512. That

23   regulation provides that the reviewing court "[s]hall receive the

24   records of the administrative proceedings." 34 C.F.R. §

25   300.512(b)(1).

26   ///

27

28   OPINION AND ORDER Page 45

1    Harris's assertion in the letter to Oman that the ODE was
2   relieved of any obligation to produce the administrative record
3   because Oman, a non-lawyer representing herself, had requested a
4   jury trial or damages is without legal justification. Consequently,
5   a reasonable factfinder could conclude that ODE's refusal to
6   provide the administrative record would reasonably deter Oman from
7   pursuing her claims in this court.

8        The state defendants' motion for summary judgment on Oman's
9   retaliation claim is denied.

**Motion for Reconsideration of Previous Rulings,**

**Motions to Affirm Prior Decisions**

12       Oman has filed a motion for reconsideration of the court's
13  previous rulings, in light of the Supreme Court's decision in
14  Winkelman v. Parma City School District, __ U.S. __, 127 S.Ct. 1994
15  (2007). The defendants have filed motions to affirm the court's
16  pre-Winkelman decisions.

17       In Winkelman, the Supreme Court held that the IDEA grants
18  parents independent, enforceable rights, not only to certain
19  procedural and reimbursement-related matters, but also to a FAPE
20  for the parent's child. The issue presented by Winkelman in this
21  case is whether any of the claims asserted in these cases,
22  previously dismissed or not, is one by which the parent, Pat Oman,
23  seeks to vindicate her own right to a FAPE for her child or,
24  rather, whether the claims she asserted were limited to her own
25  procedural rights under the IDEA and the rights of her son only to
26  a FAPE. If the former, then Winkelman changes the posture of this

OPINION AND ORDER Page 46

1   case; if the latter, then Winkelman has no effect.

2       The court has reviewed the pleadings, its previous decisions,

3   the parties' briefs, and the Winkelman decision and concluded that

4   the present action contains three issues not directly affected by

5   the Court's holding in Winkelman. The first is Oman's request for

6   judicial review of the due process hearings conducted by ODE, with

7   respect to procedural issues. The second is Oman's claim that

8   defendants hindered her exercise of IDEA procedural rights,

9   including participation in her son's IEPs, receipt of written

10  notices, access to C.O.'s educational records, reimbursement for an

11  IEE, contact with PPS witnesses before a due process hearing,

12  adequate procedural safeguard notices, and the provision of due

13  process hearings. The third is retaliation. None of these claims

14  can be construed as one asserting Pat Oman's right to a FAPE for

15  her son.

16      The court's December 22, 2005 order dismissed the IDEA claims

17  brought by C.O. on the ground that parents cannot represent their

18  minor children in IDEA civil actions. In Winkelman, the Court

19  expressly declined to reach this issue. Although the parents in

20  Winkelman brought the action *pro se*, the Court ruled that because

21  parents enjoy an independent right to their child's FAPE under the

22  IDEA, they are entitled to litigate their own IDEA claims. Thus,

23  the Court found that it "need not reach petitioners' alternative

24  argument, which concerns whether the IDEA entitles parents to

25  litigate their child's claims *pro se*." 127 S.Ct. at 2007.

26      Accordingly, Oman's motion for reconsideration of previous

27

28  OPINION AND ORDER Page 47

rulings is denied; the state defendants' motion to affirm this court's pre-<u>Winkelman</u> decisions is granted, and the PPS defendants' motion to affirm prior decisions is granted.

## Conclusion

The PPS defendants' motion for summary judgment (doc. # 96) is GRANTED in part and DENIED in part. The state defendants' motion for summary judgment (doc. # 105) is GRANTED in part and DENIED in part. Plaintiff's motion for reconsideration of previous rulings (doc. # 127) is DENIED. The PPS defendants' motion to affirm prior decisions (doc. # 123) is GRANTED. The state defendants' motion to affirm the court's pre-<u>Winkelman</u> decisions (doc. # 121) is GRANTED.

IT IS SO ORDERED.


Dated this <u>10th</u> day of <u>September</u>, 2005.


                                        <u>/s/  Dennis James Hubel</u>

                                        Dennis James Hubel
                                        United States Magistrate Judge

OPINION AND ORDER Page 48